[Civ. No. 11211. First Appellate District, Division One.—January 30, 1940.]

WITT'S DAIRY (a Copartnership) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and FRED CORWIN, Respondents.

Keith & Creede for Petitioners.

Everett A. Corten and Eldon B. Spofford for Respondents.

GOODELL, J., *pro tem.*—On February 5, 1938, respondent Fred Corwin, while in the employ of petitioner Witt's Dairy as an ice-cream maker, sustained an injury to his right knee. Petitioner Massachusetts Bonding & Insurance Company, the insurance carrier for the employer, without a hearing before the commission, voluntarily accepted liability, and medical treatment was furnished and compensation as provided by law was paid to Corwin for sixty-six weeks at the rate of $21.61 per week. At the expiration of this period these payments were discontinued by the insurance carrier on the ground that as of May 20, 1939, Corwin's temporary disability had terminated and that he was then able to perform the work he had been engaged in prior to his injury. On May 29, 1939, Corwin filed with the commission an application claiming that his temporary total disability had not terminated. A hearing was held at which the only issue was whether Corwin's temporary disability continued after May 20, 1939. It was, and is, conceded by

the employer, and by the insurance carrier, that Corwin might, in the future, have some residual permanent disability, but is is claimed that this could not be determined until he had worked for a period of six months or more. The existence and extent of such possible permanent disability was not an issue at the hearing. The commission held that the employee was still suffering a temporary total disability, and accordingly ordered the resumption or continuance of the payment of indemnity at the rate of $21.61 per week. A petition for rehearing was denied and this petition for review was filed.

The sole contention of the employer and its insurance carrier is that there is no evidence in the record before the commission to sustain its findings and award that the temporary total disability continued after the sixty-six week period had expired.

The fact that the insurance carrier, acting upon its doctor's advice, had discontinued its payments, and that the employee filed his application for a further consideration of his claimed temporary total disability, cast the burden upon him to prove that he still labored under such temporary total disability. (Labor Code, sec. 5705; *Berzin* v. *Industrial Acc. Com.*, 125 Cal. App. 522, 525 [14 Pac. (2d) 97]; *Carlson* v. *F. H. DeAtley & Co.*, 55 Idaho, 713 [46 Pac. (2d) 1089].) Schneider in his Workmen's Compensation Law, second edition, volume II, page 1871, section 537, says: "Where an employee contends that his temporary total disability continued after his physician had pronounced him fit to return to work, the burden of proving that his disability did continue thereafter rests with the claimant."

On May 20, 1939, Dr. Frederick G. Linde wrote to the insurance carrier as follows: "Mr. Corwin has recently completed the extended physiotherapeutic treatments recommended by Dr. King and, I believe, has attained a maximum improvement, sufficient to warrant his attempt to return to work. I have discontinued physiotherapeutic treatments and have instructed the patient to return to work as of May 22, 1939. His knee now flexes to 110 degrees without pain. Extension is normal. He has adjusted his shoe to accommodate for some of the pre-existing shortening of the leg. I believe that he can carry out his usual work without handicap. If he continues to work uninterruptedly, I should like to examine him in four to six weeks to note progress." In

addition to Dr. Linde's letter, there was also in evidence a letter from Dr. Donald King to Dr. Linde, dated April 12, 1939, in which Dr. King, to whom the employee had been sent for a "check up", reported respecting the case, and in which he said: "I believe that this patient is actually anxious to return to work in spite of his fourteen months lay off. I note a definite improvement in the past three months, and feel that he should be given another four weeks of active treatment before sending him back to work." Neither of these doctors was called to give oral testimony at the hearing. The only testimony was that of the employee. He described how the accident happened and then testified that he had not been back to work since (an interval of almost seventeen months). He was then asked by the referee: "Q. And the reason for that is lack of employment, or condition of the knee?" "A. Lack of employment. I have no position to go back and try to see whether I could do it or not, and they took the knee cap out." During the past three months, he testified, he thought his condition had improved. He was then asked: "Do you feel that you are back in the shape you were before the injury . . . ?" to which he replied: "Well, of course, I don't know. . . . I haven't had a job to find out whether I could or not, but, of course, the knee is not as strong as it was before, because it bothers me at times through the joint, especially when carrying anything." He testified that he experienced at such times a sensation both of weakness and of pain and that when he did too much walking, especially going up hill, he became tired. When asked whether he went back to work on May 22d, he answered that he "didn't have any job to go to". The substance of his testimony was that his employer had broken in another employee in his place "and he didn't feel like he should let him go". It was conceded by counsel for the petitioners that there would be some limitation of motion in the knee, and that the doctor could not tell how much permanent disability there would be for approximately six months; further, that the employee would be entitled to come back when the knee condition became stationary and have the permanent disability rating fixed and determined. The referee then observed that "the difficulty is the Doctor ordered him back to work and they won't take him so he can't get a work test". Corwin was then asked: "And on about May 20th he [Dr. Linde] told you to return—you

were able to work at that time?" and answered: "On May 19th, yes, sir." When asked whether he had tried to get employment elsewhere the witness answered that he had not "because as long as I had to have the hearing, I figured if I try to go to work for somebody they couldn't very well let me off to run down here. . . . I haven't tried, and I don't know whether I could have got a job or not." In conclusion when asked: "But, Mr. Corwin, if you could have gone back to your old job on May 19th, you would have taken it?", he replied: "I would have tried it, yes, sir. I am always willing to do what is fair."

This testimony of the employee when read in connection with the letters of Drs. Linde and King shows a situation simply as follows: The doctor immediately in touch with the case advises that in his opinion the patient "can carry out his usual work without handicap". The employee, who apparently had been co-operative throughout, applies promptly and with the best of intentions to his former employer for his old position, but the position has been filled, and the employer does not feel justified in discharging the new man. As the referee observed, the doctor ordered him back to work, but, because the job has been filled, he "can't get a work test". The situation, to say the least, is an unsatisfactory one for there is, in the nature of things, no starting point. The sixty-six week period of disability expired; the burden of proving that the temporary total disability had not ended but should be extended, thereupon shifted to the employee; and the very experiment which would prove or disprove his case cannot be made, not because of any fault of his but simply because there is no opening. We are constrained to the conclusion that there is no evidence in the record, in these unusual circumstances, to support the finding and award that the temporary total disability continued. In other words, the employee's burden of proof was not sustained.

In the last analysis the case presents the bald question whether this employee was physically able, on May 22, 1939, to return to the same kind of work he had performed before he was injured. It does not present the question sometimes encountered—and discussed in respondents' brief—whether an injured employee has recovered to such an extent that he can do other work, less onerous than that which formerly he was able to do, and actually locates himself in such other

job. There seems to be a rule covering such cases (see Schneider, *supra,* pp. 1344, 1345), but these facts do not call it into play. If, in the instant case, the employee was, in fact, physically able to resume his former job, then his temporary total disability would have ended, physically and legally, and in such case there would be no legal justification for holding—contrary to the fact—that it had *not* ended. The unfortunate circumstance that the job was not open certainly would not prove that he was not physically able to fill it, but simply that there was no job to be filled.

There is no conflicting evidence in the record now under review, and the opinion expressed by Dr. Linde, already referred to, would seem to be binding and conclusive. (*William Simpson C. Co.* v. *Industrial Acc. Com.,* 74 Cal. App. 239, 243 [240 Pac. 58] ; *Southern Cal. Edison Co.* v. *Industrial Acc. Com.,* 75 Cal. App. 709, 714, 715 [243 Pac. 455] ; *General Acc., F. & L. Assur. Corp.* v. *Industrial Acc. Com.,* 106 Cal. App. 39 [288 Pac. 692].) There is nothing in the record in the nature of a contradiction of Dr. Linde's opinion, by any other medical expert witness, and certainly no attempt at controverting it by the employee himself, who was the only lay witness in the case.

In short, there is no evidence in the record to the effect that on May 20 or May 22, 1939, the employee was laboring under temporary total disability, while on the other hand there is this medical evidence that he was not.

The problem presented by this case presents a legislative, and not a judicial question. Here we find an employee who admittedly was temporarily totally disabled for sixty-six weeks. He had reached a point of recovery where his case was a border-line case—he may have or may not have been able to go back to work. The employer, for reasons already mentioned, gives him no work test. The insurance carrier stops his compensation, thus requiring the employee to file a petition. Under section 5705 of the Labor Code, and the other authorities cited, *supra,* the burden of proof is thus thrown on the employee. The doctors, who are employed by the carrier, express the opinion that he can go back to work, and so recommended. The employee is doubtful, but is willing to try, and cannot get work to make the test. In this case, if the employee had testified that he *thought* he could not work, the award would probably have to be affirmed, but he was very fair, and testified he would like to try and

work. Under such circumstances where the insurance carrier has assumed liability and paid compensation until the time when the case has become a border-line case, it would seem that, from a standpoint of fairness, the burden should be on the insurance carrier to prove that the temporary disability has in fact ended.

If the carrier had denied liability at the outset, the employee would have received an award entitling him to temporary disability payments until further order of the commission. To terminate this liability, the carrier would have had to file a petition, thus assuming the burden of showing that the temporary disability had terminated. There would seem to be no reasonable ground for distinguishing between the two situations. However, under the present state of the statutes, the burden is on the employee. Not having sustained the burden, he must fail. This problem, in our opinion, should be called to the attention of the legislature for its consideration.

For the foregoing reasons, and upon the authorities cited, the award should be, and it is, annulled.

Peters, P. J., and Ward, J., concurred.