[Civ. No. 21921.    Second Dist., Div. One.    Dec. 21, 1956.]

LEONA K. MARTIN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Abe Mutchnik, Leslie C. Burg, Alexander H. Schullman and Jack R. Berger for Petitioners.

Everett A. Corten, Edward A. Sarkisian, Herlihy & Herlihy, E. Herbert Herlihy, E. H. Kendig, Jr., and K. A. Stoll for Respondents.

NOURSE (Paul), J. pro tem.*—This is a proceeding brought by petitioners pursuant to section 5950 of the Labor Code to annul an award made by the respondent commission denying petitioners compensation for the death of Charles C. Martin.

The following relevant facts are either admitted, proved by uncontradicted evidence or, in case of conflict in the evidence, sustained by substantial evidence:

Petitioners are respectively the widow and children of Charles C. Martin (hereinafter called Martin). Martin and his wife, the petitioner Leona K. Martin, were, at all times hereinafter mentioned, members of a religious sect known as Jehovah's Witnesses. One of the tenets of their religion forbade them eating the blood of another, and the transfusion of the blood of another into their veins was forbidden as a consumption or eating of that blood.

On February 23, 1955, Martin, while in the scope and course of his employment by respondent Cunningham Company, sustained serious injuries including a rupture of the spleen when the scaffold upon which he was working suddenly collapsed. Immediately after the accident Martin was taken to a hospital where his injuries were diagnosed as a probable rupture of the spleen and he was advised that an operation would be necessary and that a transfusion of whole blood was necessary and should be administered. His wife was likewise so advised. Martin and his wife advised the hospital authorities

---

*Assigned by Chairman of Judicial Council.

and the attending physician that a transfusion of blood was against their religious beliefs and that if it was a question of permitting a blood transfusion or dying, Martin would choose death. Before Martin was taken to surgery he and his wife signed a document, which the parties here have denominated a release, in which the following is stated: ''I, Charles Martin, refuse to have a transfusion of blood, even tho it may mean the loss of my life, because of my religious beliefs.'' An operation was then performed, the physicians using blood plasma and other substitutes for whole blood. Upon the opening of the abdomen the cavity was found to be full of blood, and there was a laceration of the spleen pulp with active bleeding. The spleen was surgically removed and, about two hours after the operation, Martin went into acute shock. The attending physician ordered a blood transfusion in the hope of saving his life, but the hospital authorities declined to consent to its being given because of the refusal of Martin and his wife to permit such transfusion, and shortly thereafter he died.

It was established by medical evidence that transfusion of substitutes for whole blood would not suffice to prevent shock, that transfusion of whole blood is the usual procedure in spleen operations and that the risks of such blood transfusions are minimal compared with the benefits thereof, and that the transfusion of whole blood in adequate amounts during and after surgery would probably have saved Martin's life.

Upon reconsideration of the findings and award made by the referee, the commission made the following finding: ''The death of the employee on February 24, 1955, was proximately caused by said employee's unreasonable refusal to accept proper medical treatment, and his death was not the proximate result of the injury of February 23, 1955.''

On the basis of this finding the commission entered its order denying compensation to petitioners.

The statutory basis for the commission's denial of compensation pursuant to its finding above quoted is found in section 4056 of the Labor Code.[1]

---

[1]Wording of section 4056: ''No compensation is payable in case of the death or disability of an employee when his death is caused, or when and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the commission, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury.''

■ The question as to whether Martin's refusal to accept a blood transfusion was an unreasonable refusal to submit to medical treatment was a question of fact to be determined by the commission from all of the evidence before it, and if its findings and conclusions upon that issue of fact are supported by substantial evidence they are not subject to review by this court. (Lab. Code, § 5953; *Danziger* v. *Industrial Acc. Com.*, 109 Cal.App. 71 [292 P. 525]; *Southern Calif. Edison Co.* v. *Industrial Acc. Com.*, 75 Cal.App. 709 [243 P. 455]; *Bethlehem Steel Corp.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 369 [161 P.2d 18].)

Petitioners do not contend that there was not substantial evidence that the dangers inherent in a blood transfusion were minimal and that transfusion of whole blood would probably have saved Martin's life, but contend that despite these facts the commission could not find Martin's refusal to be unreasonable without finding that his religious beliefs and the tenets of his religion were unreasonable, and that it was beyond the province of the commission to so find. In other words, it is petitioners' contention that the commission was limited to finding whether Martin acted as a reasonable member of Jehovah's Witnesses Church and that, it being admitted that he entertained the belief which he asserted, and to which we have adverted, in good faith, the commission could not take any other fact into consideration in determining the reasonableness of his refusal.

We think that petitioners' contention misconceives the real question presented. No question is presented as to the reasonableness of Martin's belief or of his religion, but the question presented to the commission and found upon by them was whether, in the light of all of the evidence including his religious beliefs, it was unreasonable for him to refuse to accept a treatment necessary to save his life.

Section 4056 of the Labor Code is a part of the statutory plan or scheme for workmen's compensation which imposes liability upon the employer for an industrial injury without regard to fault, and the Legislature clearly had the right to make it a condition of the right to receive compensation and of the imposition of liability on the employer that the employee should not unreasonably refuse to accept medical care.

Petitioners entirely overlook the fact that not only are Martin's rights to compensation involved but the employer's liability for the payment of compensation is also involved. ■ Certainly it was not unreasonable for the Legislature

to fix as a condition to the employer's liability that the death of an employee must arise out of his employment and that it should not exist where death is the result of the voluntary act of the employee in refusing medical attention. Here the commission not only found that Martin's refusal of medical care was unreasonable but that his death was due not to the injury received in the scope and course of his employment but by his refusal of transfusions of whole blood. Martin was not obligated to work in an employment that rendered him subject to the Workmen's Compensation Act, and if he accepted such employment he accepted it, insofar as his right to compensation is concerned, subject to the conditions imposed by the Legislature upon the right to such compensation.

It is petitioners' contention, however, that if the statute is construed as permitting the commission to hold that an employee's refusal to accept medical aid is unreasonable where the acceptance of such aid is contrary to his religious beliefs, the statute denies him his constitutional right of religious freedom and to the equal protection of the laws.

There is no merit in this contention, for "[a]lthough freedom of conscience and the freedom to believe are absolute, the freedom to act is not" (*Pencovic* v. *Pencovic,* 45 Cal.2d 97, 103 [287 P.2d 501]). (*Prince* v. *Massachusetts,* 321 U.S. 158, 169-170 [64 S.Ct. 438, 88 L.Ed. 654]; *Jacobson* v. *Massachusetts,* 197 U.S. 11, 29 [25 S.Ct. 358, 49 L.Ed. 643]; *Adler* v. *Board of Education,* 342 U.S. 485 [72 S.Ct. 380, 96 L.Ed 517, 27 A.L.R.2d 472].) Under the statute here Martin was free to believe and worship as he chose, and he was further free, if he so chose, to practice his belief; but if he exercised that choice and his death resulted from his choice, petitioners were not entitled, as a matter of right, to the benefits of the workmen's compensation laws.

Petitioners cite, in support of their proposition that the statute is unconstitutional, *West Virginia State Board of Education* v. *Barnette,* 319 U.S. 624 [63 S.Ct. 1178, 87 L.Ed. 1628, 147 A.L.R. 674], and *Hardwick* v. *Board of School Trustees,* 54 Cal.App. 696 [205 P. 49]. These cases, however, are clearly distinguishable. In each of them the statute made the performance of an act contrary to the religious belief of the petitioner compulsory, and the refusal to conform subjected the one so refusing to penal action. There is nothing in the present statute that compels an employee to accept medical treatment of any kind, and he is free to make his choice between the practice of his religion and the accept-

ance of treatment that may be contrary thereto; but if he refuses, the commission is bound, as a court or jury would be in a tort action, to look at all of the facts and to determine therefrom whether his refusal was reasonable. (As to rules in tort actions, see *Christiansen* v. *Hollings,* 44 Cal.App.2d 332, 345-346 [112 P.2d 723].)

Section 4056 of the Labor Code no more transgressed upon Martin's constitutional rights than did the statute involved in the case of *Hamilton* v. *University of California,* 293 U.S. 245 [55 S.Ct. 197, 79 L.Ed. 343], transgress Hamilton's, or the statute under the provisions of which Adler was expelled from the faculty of an educational institution in the case of *Adler* v. *Board of Education, supra,* transgress Adler's.

In the Hamilton case the United States Supreme Court held that the denial of the right to education in a state university because of a refusal by a conscientious objector to take a prescribed course in military training and tactics did not violate Hamilton's right to religious freedom as guaranteed by the federal and state Constitutions. In the Adler case that court held that the denial of employment in the state school system to one who was a member of a subversive organization did not violate the right of free speech and assemblage as guaranteed by the federal Constitution, saying in substance that the state had a right to fix reasonable conditions which must be met by those who sought employment or to retain employment in its educational institutions, and that a condition which forbade the employment of one who was a member of an organization which had been found to be subversive did not deny that person his constitutional rights of free speech and assemblage, as he remained free to choose employment where he might exercise them as he saw fit.

So in the case at bar Martin was free to accept the tenets of his church and believe in them, and he was free to exercise his right to practice those beliefs, but that did not give him a right to impose, contrary to the statute, a liability upon his employer for his death resulting from his voluntary practice of his religion.

Petitioners seek to apply here the cases which hold that an employer "takes an employee as he finds him" and that the employee may recover compensation for an injury received during the course of his employment although the inducing proximate cause of his injury is some disease or physical disability not connected with his employment. (See *Edson* v. *Industrial Acc. Com.,* 206 Cal. 134 [273 P. 572]; *Employers*

*etc. Ins. Co.* v. *Industrial Acc. Com.*, 41 Cal.2d 676 [263 P.2d 4].)

The cited cases hold that where an employee sustains an injury while acting in the scope and course of his employment due to a fall caused by some disease or physical disability, the injury is compensable as arising out of his employment inasmuch as the statute contains no exception to injuries arising in the scope and course of employment which are contributed to by a nonindustrial disease or physical disability of the employee. In the present case, however, the Legislature has seen fit to deny the right to compensation where the death or disability is contributed to by an unreasonable refusal to accept medical care. We could not, therefore, apply the decisions upon which petitioners rely to the facts here without in effect setting at naught the express provisions of the statute.

By their petition here petitioners have also sought to have us review the findings of the commission wherein it found that the original injury sustained by Martin was not caused by the willful misconduct of his employer. In view, however, of the conclusion which we have heretofore reached, it is unnecessary for us to discuss and decide this question.

The award of the Industrial Accident Commission is affirmed.

White, P. J., and Fourt, J., concurred.

Petitioners' application for a hearing by the Supreme Court was denied February 13, 1957. Carter, J., was of the opinion that the application should be granted.