[Civ. No. 1739. Fifth Dist. July 13, 1973.]

DELLA ROBENA MONTGOMERY, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE KERN COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION, Defendant and Respondent.

**COUNSEL**

Stuart H. Blecher and Thomas M. Sobel for Plaintiff and Appellant.

Ralph B. Jordan, County Counsel, and D. N. Reid, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Pursuant to Code of Civil Procedure section 1094.5, the appellant filed a petition in administrative mandamus in the superior court for a writ directing the Board of Retirement of the Kern County Employees' Retirement Association (hereinafter the "Board") to grant her claim for nonservice-connected disability retirement benefits. The petition was denied by the superior court without opinion. The cause is before this court upon an appeal by the appellant from that judgment.

The basic facts are not in dispute. The question of law is whether the Board's decision abridged appellant's right to the free exercise of her religion, secured under the free exercise clause of the First Amendment through the Fourteenth Amendment of the United States Constitution.

Appellant was employed by the County of Kern for a period in excess of 10 years as an account clerk. Because of a uterine tumor, she became disabled from performing her duties. Being a member of the Kern County Employees' Retirement Association (hereinafter the "Association"), she applied with the Board for nonservice-connected disability retirement.

The Association is supported by contributions deducted from the wages of employees and officers of the county (Gov. Code, § 31620 et seq.) and by "a special tax to be used for the payment of pensions and annuities." (Gov. Code, § 31200.) The money is paid into a trust fund account designated as "Employees' Retirement Fund." (Gov. Code, § 31588.) If a member separates from the service of the county before retirement and separation is for any cause other than permanent disability, he may recover all the money paid in by him and accumulated interest thereon. (Gov. Code, § 31201.) Under the retirement law, provision is made for nonservice-connected disability retirement benefits. If a member of the association is permanently incapacitated for the performance of duty he shall be retired for disability. (Gov. Code, § 31720.)

After a hearing the hearing officer found inter alia that:

"III

"The underlying cause of applicant's difficulties is an [*sic*] uterine tumor. The best medical opinion is that this tumor is probably benign and that it is operable.

"If surgery is performed applicant would be hospitalized for approximately two weeks, spend approximately an additional month convalescing and be able to return to work at the end of her convalescence.

"If applicant does not undergo surgery there is a high degree of medical probability that she will die in the near future.

"IV

"Applicant is a member, officer, worker and teacher in the Church of God (Evening Light Saints). She sincerely follows this religion and adheres to its tenets. The members of this Church believe in Divine healing and oppose treatment by a physician if that treatment involves the internal use of drugs or internal surgery.

"Submission to an internal operation by applicant would, in her view and that of her Church, be a disavowal of the power of God and therefore would be a sin."

The findings and decision of the hearing officer were adopted by the Board. The Board denied appellant's application. The findings and decision of the Board were before the superior court. No additional evidence was taken by nor were findings made by the superior court.

It is undisputed that so long as appellant does not have an operation her condition, which incapacitates her from work, is permanent. The Board in effect found that because her condition was correctable by surgery appellant was not permanently incapacitated within the meaning of Government Code section 31720 and, therefore, denied her benefits. ■ Since it is appellant's religious beliefs which do not permit her to undergo surgery, we therefore squarely face the question of whether she is entitled to the retirement benefits though the condition from which she suffers is correctable by an operation presenting no unusual hazards but which procedure is violative of her sincerely held religious beliefs.

The First Amendment to the United States Constitution reads in pertinent part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . ."[1]

In *People* v. *Woody* (1964) 61 Cal.2d 716, at page 718 [40 Cal.Rptr. 69, 394 P.2d 813], our Supreme Court said: "Although the prohibition against infringement of religious belief is absolute, the immunity afforded religious practices by the First Amendment is not so rigid. [Citations.]"

The decision of the Supreme Court of the United States in *Sherbert* v. *Verner* (1963) 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790], upon its facts and upon principle, is analogous to the case at bench and we believe is dispositive of the issues herein. The Supreme Court of California in *People* v. *Woody, supra,* 61 Cal.2d 716, at pages 718-719, summarized the holding in *Sherbert* v. *Verner* by stating: "In *Sherbert* a South Carolina employer discharged appellant, a Seventh-day Adventist, because she refused to work on Saturdays. Since her 'conscientious scruples' against Saturday work precluded her from obtaining other employment, appellant applied for unemployment compensation benefits. The South Carolina Employment Security Commission rejected appellant's claim upon the ground that she had '. . . failed, without good cause . . . to accept available suitable work. . . .' The South Carolina courts affirmed the com-

[1]See also article I, section 4, of the California Constitution, which reads: "The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be guaranteed in this State; and no person shall be rendered incompetent to be a witness or juror on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State."

mission's ruling despite appellant's contention that application of the disqualifying provision of the statute abridged her right to the free exercise of her religion.

"The United States Supreme Court reversed, finding, first, that the denial of compensation benefits clearly constituted a burden upon the free exercise of appellant's religion. The court then stated that it must '. . . consider whether some compelling state interest enforced in the eligibility provisions of the South Carolina statute justifies the substantial infringement of appellant's First Amendment right. . . .'

"The court in *Sherbert* thus utilized a twofold analysis which calls for a determination of, first, whether the application of the statute imposes any burden upon the free exercise of the defendant's religion, and second, if it does, whether some compelling state interest justifies the infringement." (Fn. omitted.)

In enunciating that South Carolina placed a burden upon the free exercise of the appellant's religion, the Supreme Court of the United States said: "Here not only is it apparent that appellant's declared ineligibility for benefits derives solely from the practice of her religion, but the pressure upon her to forego that practice is unmistakable. The ruling forces her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship." (*Sherbert* v. *Verner, supra,* 374 U.S. at p. 404 [10 L.Ed.2d at pp. 970-971, 83 S.Ct. at p. 1794].)

Although respondent argues to the contrary, an analogous indirect burden is placed upon the free exercise of appellant's religion herein by her disqualification for disability retirement. The denial of disability retirement forces appellant to choose between following the precepts of her religion and forfeiting the disability retirement benefits on the one hand and abandoning one of the precepts of her religion in order to cease to be permanently disabled and return to work on the other hand. In effect, appellant may not practice her religion and receive benefits. Following *Sherbert, supra,* such a choice places a burden upon the practice of appellant's religion.

Turning to the second prong of the test, we consider whether some compelling state interest justifies the substantial infringement of appellant's First Amendment right. In this frame of reference, we note that the Supreme Court in *Sherbert* said: "It is basic that no showing merely of a rational

relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation,' [citation]." (374 U.S. at p. 406 [10 L.Ed.2d at p. 972, 83 S.Ct. at p. 1795].) (See *People* v. *Woody, supra,* 61 Cal.2d at p. 719.)

Measured against this stringent standard, we perceive no compelling state or county interest enforced in the eligibility provisions of the disability retirement statute justifying the substantial infringement of appellant's First Amendment right to the free exercise of her religion. We glean from respondent's brief three such interests: (1) The preservation of the life and health of citizens; (2) the preservation of an active and capable and productive county work force; and (3) the preservation of the financial integrity of the fund upon which the members rely through the preservation of a reasonably objective medical standard for determining what type of condition constitutes a permanent incapacity.

There is no factual showing and reason does not support a conclusion that any of these interests would be substantially threatened by a rule permitting employees to reject medical treatment because the treatment conflicts with their religious beliefs. In the absence of some factual showing, we are unwilling to speculate that the number of employees who fit appellant's mold is so large as to have other than a minimal impact upon the health of public employees, disrupt the public service, or substantially affect the financial integrity of the fund.

The state and county do have an interest in preserving the life and health of its citizens and in preserving an active, capable and productive work force. However, totally aside from religious considerations, it is generally held that the courts or other governmental agencies do not have the power to protect that interest by compelling treatment of a sane, conscious adult against the adult's wishes. (See 9 A.L.R.3d 1391—Power of Courts or Other Public Agencies, in the Absence of Statutory Authority, to Order Compulsory Medical Care for Adult.) When considerations of conscience grounded upon religious beliefs are involved, the state interest in preserving health pales into insignificance.

The preservation of the financial integrity of the retirement fund is a legitimate governmental interest. However, there is no showing nor any finding that the integrity of the fund will be threatened by permitting appellant to receive retirement benefits. Moreover, as was said in *Sherbert* v. *Verner, supra,* 374 U.S. at page 407 [10 L.Ed.2d at page 972, 83 S.Ct. at page 1796]: "For even if the possibility of spurious claims did threaten to dilute the fund and disrupt the scheduling of work, it would plainly

be incumbent upon the appellees to demonstrate that no alternative forms of regulation would combat such abuses without infringing First Amendment rights. [Citations.]" (Fn. omitted.) Furthermore, in a constitutional context involving basic rights, the preservation of moneys is not of primary significance. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011].)

Citing *Martin* v. *Industrial Acc. Com.* (1956) 147 Cal.App.2d 137 [304 P.2d 828], respondent argues that the Board did not deny appellant the right to religious freedom since her action was a voluntary choice, she being at all times free to believe, worship and practice whatever religion she chose. In *Martin,* an employee's widow and children filed a workmen's compensation claim for death benefit. The employee, injured in an industrial accident, refused to have a blood transfusion on religious grounds and, as a result of the refusal, died in the hospital. The court held that although the employee could refuse to have the transfusion, his widow and children were not entitled to the death benefit, stating: "There is no merit in this contention, for '[a]lthough freedom of conscience and the freedom to believe are absolute, the freedom to act is not' [citation]. [Citations.] Under the statute here Martin was free to believe and worship as he chose, and he was further free, if he so chose, to practice his belief; but if he exercised that choice and his death resulted from his choice, petitioners were not entitled, as a matter of right, to the benefits of the workmen's compensation laws.

"      .    .    .    .    .    .    .    .    .    .    ·    .    .    .    .    .    .    .    .

"So in the case at bar Martin was free to accept the tenets of his church and believe in them, and he was free to exercise his right to practice those beliefs, but that did not give him a right to impose, contrary to the statute, a liability upon his employer for his death resulting from his voluntary practice of his religion." (At pp. 141-142.)

*Martin* has not been cited in any subsequent case. The *ratio decidendi* of the case is inconsistent with and cannot be reconciled with the rules laid down in the later cases of *Sherbert* v. *Verner, supra, People* v. *Woody, supra,* and *Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519 [7 Cal.Rptr. 97, 354 P.2d 625]. The conclusion is unavoidable that the principles set forth in *Martin* v. *Industrial Acc. Com., supra,* 147 Cal.App.2d 137, no longer represent the law in this field.

The judgment is reversed.

Gargano, J., and Franson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 6, 1973.