Floyd WILCUT, dec., and Sharon
Wilcut, Appellants,

v.

INNOVATIVE WAREHOUSING,
Respondent.

No. ED 88247.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 15, 2008.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 10, 2008.

George T. Floros, St. Louis, MO, for respondents.

Gary G. Matheny, Farmington, MO, for appellant.

## OPINION

GLENN A. NORTON, Presiding Judge.

Sharon Wilcut ("Dependent") appeals the Labor and Industrial Relation Commission's ("Commission") final award de-nying compensation on her claim for death benefits. We hold that the Commission erred in finding that Dependent's husband, Floyd Wilcut ("Employee"), unreasonably refused a blood transfusion. We reverse the award and remand.

## I. BACKGROUND

Employee was a truck driver for Innovative Warehousing ("Employer"). He was involved in an accident in which he sustained several severe injuries. Employer does not dispute that the accident occurred in the scope of Employee's employment. Employee was taken to a hospital for treatment. He died seven days later.

Employee's treatment was complicated by his refusal to accept a blood transfusion. Employee was a Jehovah's Witness. Members of that faith believe it is a great sin to accept a blood transfusion. Employee was conscious and able to make decisions for himself upon admission to the hospital, and he made it clear that he would not accept the transfusion. This was affirmed by his family and others close to him both before and after losing consciousness. Employee was unable to undergo essential procedures to treat his wounds because he would not accept a blood transfusion, and he died from cardiac ischemia and severe anemia due to the blood lost following the accident.

There was no evidence that Employer objected to the refusal. Employer paid Employee's funeral expenses and paid death benefits to Dependent for nearly two years after the accident. After Employer stopped paying, Dependent filed this action for an award of death benefits commencing from the date they were terminated.

At the hearing in front of the administrative law judge ("ALJ"), doctors testified that Employee's death was preventable if

he had accepted the transfusion. A Jehovah's Witness church elder and Employee's family members testified that refusal of blood transfusions is a tenet of the faith and that Employee was a follower of the faith and in good standing with the church. The elder also testified that a Jehovah's Witness may seek forgiveness for sins. The ALJ found, among other things, that Employee's refusal was not unreasonable under section 287.140.5,[1] given his beliefs as a Jehovah's Witness, and therefore he was entitled to benefits.

Employer appealed to the Commission. The Commission adopted the ALJ's findings of fact. The Commission differed with the ALJ, however, in its analysis of the reasonableness of Employee's refusal to accept a blood transfusion. The Commission found the refusal unreasonable both because the physical risk was minimal compared to the near certainty Employee would survive his injuries if he accepted the transfusion, and because Jehovah's Witnesses believe they can seek forgiveness for their sins.

Dependent appeals.

## II. DISCUSSION

### A. Standard of Review

■ On appeal from a decision of the Commission, we review questions of law and will reverse, remand, modify or set aside the Commission's decision only where we find one of the following: (1) that the Commission acted without or in excess of its power; (2) that the award was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was not sufficient competent evidence in the record to warrant the making of the award. *Zimmerman v. City of Richmond Heights*, 194 S.W.3d 875, 876 (Mo.App. E.D.2006) (citing

section 287.495.1). The Commission's factual findings are conclusive if they are without fraud and supported by substantial and competent evidence on the whole record. *Willcut v. Division of Employment Security*, 193 S.W.3d 410, 412 (Mo.App. E.D.2006). This standard is not met when the award is against the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). We are not bound, however, by the Commission's determinations of questions of law, which we review independently. *Willcut*, 193 S.W.3d at 412. We defer to the Commission's determinations of witness credibility and its resolutions of conflicting evidence. *Id.*

### B. The Commission's Decision

We first closely examine the Commission's decision because of the case's unique facts and the decision's complicated reasoning. The Commission addressed Employee's refusal with the aid of *Martin v. Industrial Accident Commission*, 147 Cal. App.2d 137, 304 P.2d 828 (1956). In *Martin*, an employee sustained a work-related injury. *Id.* at 828–29. The employee and his wife informed hospital authorities and the treating physician that he was a Jehovah's Witness and therefore refused blood transfusions. *Id.* at 829. He died shortly thereafter from complications that arose during a surgical procedure. *Id.* He likely would have survived had a transfusion been part of the treatment. *Id.* California's industrial commission denied compensation because it determined that the refusal was unreasonable, interpreting a statute similar to ours here. *Id.* (quoting "section 4056 of the Labor Code" as it existed in 1956). The California court framed the issue as whether, "in the light of all of the evidence including his religious

---

1. All statutory references are to RSMo 2000    unless otherwise indicated.

beliefs, it was unreasonable for him to refuse to·accept a treatment necessary to save his life." *Id.* at 830. The court found that it was unreasonable, explaining that the legislature conditioned an employer's liability on finding that the employee's death was not "the result of the voluntary act of the employee in refusing medical attention." *Id.*

Here, the Commission agreed with the court's rationale in *Martin* and considered all facts in the record that it found relevant to its decision, including Employee's beliefs. It found: (1) that the physical risk of transfusion was minimal compared to the benefit; (2) that Employee was 53–years–old at the time of his death; (3) that the spiritual risk from Employee's faith's perspective "was the commission of a capital sin, which would hinder prayer and could prevent enjoyment of everlasting life;" and (4) that "Jehovah's Witnesses believe that Jehovah forgives, so if [E]mployee had lived, [E]mployee may have been able to atone for the sin of accepting the blood transfusion." The Commission concluded that Employee's refusal was unreasonable and "broke the medical causal link between work-related accident and his death."

## C. Unreasonable Refusal of Treatment or Procedure Under Section 287.140.5

■ Whether a claimant's refusal of treatment is unreasonable is a question of fact. *Stawizynski v. J.S. Alberici Construction Co.,* 936 S.W.2d 159, 163 (Mo. App. E.D.1996), *overruled on other grounds by Hampton,* 121 S.W.3d at 222–23. Under our standard of review, we must examine whether the Commission's determination—that Employee's refusal of

treatment was unreasonable—was supported by competent and substantial evidence on the whole record and was not against the overwhelming weight of the evidence.

■ Our review of Missouri caselaw, however, reveals no case where the reasonableness of an employee's decision to forego treatment was based on religious beliefs. We must then determine what is meant by "unreasonable" in section 287.140.5. Section 287.140.5 states, in pertinent part, that:

> No compensation shall be payable for the death or disability of an employee, if and insofar as the death or disability may be caused, continued or aggravated by any unreasonable refusal to submit to any medical or surgical treatment or operation, the risk of which is, in the opinion of the division or the commission, inconsiderable in view of the seriousness of the injury.

Dependent argues for a liberal interpretation of section 287.140.5. At the time of the accident, April 2000, the Workers Compensation Law was to be construed liberally. Section 287.800.[2] We review a worker's compensation case under the statutes in effect at the time of the accident. *See Chouteau v. Netco Construction,* 132 S.W.3d 328, 336 n. 3 (Mo.App. W.D.2004). We will construe section 287.140.5 liberally in accordance with the statutes in effect at that time. Thus, we interpret the statute with a view to public welfare and for the purpose of enabling more employees to be eligible for compensation for injuries arising out of and in the course of employment. *State ex rel. Doe Run Co. v. Brown,* 918 S.W.2d 303, 307 (Mo.App. E.D. 1996), *overruled on other grounds by*

---

**2.** The statute has since been revised to dictate strict construction. *See* section 287.800 Cum. Supp. RSMo 2006.

*Farmer v. Barlow Truck Lines, Inc.*, 979 S.W.2d 169, 171 (Mo. banc 1998).

At the outset, we note that statutory construction is a matter of law, not fact. *City of St. Joseph v. Village of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005). We therefore interpret the statute independently. *Willcut*, 193 S.W.3d at 412. We must ascertain the legislature's intent from the language of the statute. *Skabialka v. Tort Victim Compensation Fund*, 133 S.W.3d 565, 567 (Mo.App. E.D. 2004). Further, provisions of a legislative act such as the Worker's Compensation Law are to be construed consistently and harmoniously to give effect to the entire statute. *See, e.g., St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo.App. E.D.2000); *Snow v. Hicks Brothers Chevrolet, Inc.*, 480 S.W.2d 97, 102 (Mo.App. 1972) (finding that the Worker's Compensation Law is *in pari materia* and its provisions are to be construed together).

We must determine to what extent the legislature intended an employee's religious beliefs to be considered when analyzing whether a refusal of treatment was unreasonable. Section 287.140.5 does not simply state that any refusal of a low-risk, but beneficial, treatment will result in denial of compensation; the refusal must also be unreasonable in some sense. The section does not provide any further guidance to determine what the legislature might consider "unreasonable." We then examine the other provisions of the Worker's Compensation Law in harmony with section 287.140.5 to interpret what weight to give to Employee's religious beliefs in assessing the reasonableness of his refusal.

Some guidance is found in a nearby section of the Worker's Compensation Law. Section 287.140.9 states that "[n]othing in this chapter shall prevent an employee being provided treatment for his injuries by prayer or spiritual means if the employer does not object to the treatment." Dependent cannot claim sanctuary in this section alone in proving the compensability of her claim, however, because Employee and those directing his care chose medical treatment in lieu of the transfusion, including medicines and supplements intended to stimulate blood production.

Nevertheless, the section does show that the legislature contemplated that religious beliefs might impact an employee's decision-making on what treatment to undertake. Necessarily, if section 287.140.5 is to be read harmoniously and liberally construed, sincerely-held religious beliefs must be considered by the Commission. Therefore, when liberally interpreting the phrase "unreasonable refusal [of] ... treatment" in section 287.140.5 harmoniously with section 287.140.9 to give effect to the legislature's intent, we understand the statute to liberally accommodate an employee's religious beliefs to the extent that they influence his decision to pursue, or not to pursue, a course of treatment.

### D. Analysis of the Commission's Decision

Under this interpretation of section 287.140.5, we analyze whether the Commission's decision was supported by competent and substantial evidence. Upon review, there was no question that Employee's beliefs were sincere. His family and church elders testified about his good standing with the Jehovah's Witnesses and his personal belief in this particular tenet of the faith. This is evidenced further by his willingness to die in the face of several medical professionals advocating a blood transfusion to recover from his injuries.

We find that the Commission failed to adequately accommodate Employee's reli-

gious beliefs in its decision. While it did recite some of Employee's beliefs, these beliefs received no deference in the final decision. Instead, the Commission followed *Martin* and found that Employee's decision was a voluntary one and broke the causation between his accident and his death. The Commission's reliance on *Martin*, however, is misplaced at best. In addition to being a case from outside this jurisdiction, *Martin* was expressly overruled in *Montgomery v. Board of Retirement*, 33 Cal.App.3d 447, 109 Cal.Rptr. 181, 185–86 (1973). The court in Montgomery found that the court's reasoning in *Martin* was not consistent with the United States Supreme Court's and California courts' interpretations of the constitutional right to freely exercise religion, and the court refused to follow *Martin*. *Id.* at 186.

The Commission's disregard for Employee's religious beliefs is evident in its short analysis of Employee's claim under 287.140.9. The Commission stated that Employee did not refuse the transfusion in order to treat his injuries; it stated that he instead refused "for the purpose of complying with a religious edict so he could remain free of sin." Further, when addressing his claim that he was denied free exercise of his religion, the Commission stated that Employee had to bear the weight of strictly observing his religion. These statements demonstrate that the Commission believed that a religious reason, no matter how strongly held, would not be enough to justify compensation under section 287.140.5.[3] In determining what was unreasonable, it relied not only on the question of whether an employee gravely injured in a work-related accident had refused treatment that likely would have benefited him, but also on its conclusion that Employee could have asked for atonement for his sins.

We hold that the Commission's decision was not supported by competent and substantial evidence. The statutory scheme dictates that religious beliefs be liberally

**3.** We disagree with Judge Romines's dissenting opinion, which concludes that this decision violates the United States and Missouri Constitutions. Our decision here is an analysis of the legislature's own language and its intent as expressed in these statutes. Cases cited in the dissent for the proposition that "courts are to stay removed from denominational doctrine" are not related to our analysis of the statutory scheme and the Commission's decision. The United States Supreme Court has held that civil courts shall accept the "decisions of the highest ecclesiastical tribunal within a church of hierarchal polity" on matters of faith, discipline, church law or internal organization; here, we are not questioning a religious tribunal's decision. *See Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696, 708–713, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (holding that state court erred in rejecting church tribunal's decisions and substituting its own inquiry). Other cases cited in the dissent involve resolution of church property disputes, which are not at issue here. *See Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, 682 S.W.2d 465 (Mo. banc 1984). We are also not analyzing whether Employee's freedom to exercise religion was violated, which was the issue of *Bowen v. Roy* and *Penner v. King*, both cited in the dissent. 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986); 695 S.W.2d 887 (Mo. banc 1985) (both holding that a government requirement to supply Social Security number to receive a benefit was not violative). Finally, we do not recognize the relevance of the remaining cases cited in the dissent. *See Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) (finding no Free Exercise or Establishment Clause violation in recognizing religious foundation's "associates" as "employees" and the foundation's activities as a "commercial enterprise" under the Fair Labor Standards Act); *State v. Sandles*, 740 S.W.2d 169 (Mo. banc 1987) (holding that excusal of juror in capital case for his faith-based opposition to death penalty did not violate Missouri Constitution because jurors must follow laws of the State).

considered, and we find that Employee invoked his strong and sincerely held religious beliefs against a transfusion.[4] This refusal was not unreasonable in light of his beliefs, and Dependent is owed death benefits from the date that the benefits were terminated.[5]

## III. CONCLUSION

We reverse the Commission's decision and remand for further proceedings consistent with this opinion.

LAWRENCE E. MOONEY, J., concurs with J. NORTON.

KENNETH M. ROMINES, J., dissents.

KENNETH M. ROMINES, Judge.

I dissent. This case is not about the exercise of a religious belief—it is about money. The majority opinion confuses the manner of our review and imposes an amorphous standard that is not compelled by Constitution or statute and is not consistent with a court's duty to avoid an analysis of another's religious beliefs.

Initially, the testimony is clear—a blood transfusion and Mr. Wilcut *would have survived.* This refusal was not a "complication," as the majority suggests. Simply, Mr. Wilcut and his family exercised their religious beliefs—the employer did not seek judicial intervention, nor did the State, to compel a transfusion.[1] As such, there is no religious conundrum for this Court to tackle.

I start by assuming that our Workers' Compensation statutes are neutral as to religious precepts. The statutory sections at issue are clear-not ambiguous; they are reconcilable—not in contradiction. Sections 287.140.5 and 287.140.9 state:

5. No compensation shall be payable for the death or disability of an employee, if and insofar as the death or disability may be caused, continued or aggravated by any unreasonable refusal to submit to any medical or surgical treatment or operation, the risk of which is, in the opinion of the division or the commission, inconsiderable in view of the seriousness of the injury. If the employee dies as a result of an operation made necessary by the injury, the death shall be deemed to be caused by the injury.; and

9. Nothing in this chapter shall prevent an employee being provided treatment for his injuries by prayer or spiritual means if the employer does not object to the treatment.

As is patent, Section 387.140.5 requires *the Commission* to determine if a refusal is unreasonable "... in view of the seriousness of the injury...." As is obvious, the injury here was life threatening. This record leaves no doubt that the medical opinion was unanimous—a transfusion was

---

4. We note that our decision is in line with this Court's analysis of an employee's refusal to receive treatment for tetanus in *Cuchi v. George C. Prendergast & Sons,* 72 S.W.2d 136 (Mo.App.1934). There, we affirmed the Commission's decision to award benefits because the employee's decision to refuse treatment was not unreasonable. *Id.* at 138. In doing so, we carefully reviewed the individual circumstances of the employee, who was "an illiterate foreigner who did not thoroughly understand the English language." *Id.* As in *Cuchi,* we find that the Commission must evaluate the reasonableness of an employee's decision to refuse treatment according to the employee's individual circumstances. In this case, those circumstances include his sincere religious beliefs.

5. We decline to address Dependent's other point on appeal because this point is dispositive.

1. See *Morrison v. State,* 252 S.W.2d 97 (Mo. App.1952).

compelled. The medical opinion was correct.

This record is likewise clear that the Wilcut family *and* medical staff were in contact with Jehovah's Witness counselors who recommended *medical treatment* that did not include a transfusion of whole blood. This is the record on which the Commission reached the *factual* conclusion that the refusal was unreasonable, consistent with Section 287.140.5. The Commission reached the only principled conclusion under the facts before it.

The majority, in my judgment, compounds error by then making Section 287.140.9 something more than it is. I read this sub-section to say "pray if you wish", or, "bring in your Pastor, Priest, Practitioner, or Shaman." This section does not justify the Court's straying into a discussion of the principles of a Jehovah's Witness. Whatever Mr. Wilcut's beliefs were, they are not necessary to a construction by *the Commission* as to whether money is to be paid pursuant to Section 287.140. To even engage in this discussion violates clear principles set out by the United States Supreme Court and the Missouri Supreme Court, in both free exercise cases and establishment cases [2]—courts are to stay removed from denominational doctrine. Courts have an affirmative Constitutional duty to avoid predestination, transubstantiation, and blood transfusions. The Court engages in a Lewis Carroll exercise—under which if an Atheist or Methodist refused a blood transfusion, the Court would, I assume, find this "unreasonable."

I suspect that a Jehovah's Witness who reads the Court's doctrinal discussion would find it clumsy and cluttered. *Courts cannot base decisions on doctrine.* There can be neither a Presbyterian, Christian Science, nor Jehovah's Witness exception to Section 287.140.5; to do so violates the First Amendment to the United States Constitution, and Mo. Const. Art. I, Sections 5 and 7.

---

**2.** See *Serbian Eastern Orthodox Diocese for U.S. and Canada v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); *Tony and Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985);

*Bowen v. Roy,* 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986); *Penner v. King,* 695 S.W.2d 887 (Mo. banc 1985); *State v. Sandles,* 740 S.W.2d 169, 178 (Mo. banc 1987); and *Presbytery of Elijah Parish Lovejoy v. Jaeggi,* 682 S.W.2d 465 (Mo. banc 1984).