[Civ. No. 5167.   Second Appellate District, Division One.—December 22, 1925.]

·SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and OLIVER R. HARRIS, Respondents.

[1] Workmen's Compensation Act — Injuries to Employee — Refusal to Undergo Surgical Operation—Liability of Employer. An injured employee must justify his refusal to consent to an operation for the relief of his injury, which his employer offers to provide coincident with the recommendations of medical and surgical experts after an examination of the employee, upon the conditions as they exist at the time of his refusal, and not upon conditions existing twenty-two months after the injury occurred, since under subdivision (e) of section 11 of the Workmen's Compensation Act, an employee cannot take advantage of his own delay in refusing to be operated on for injuries which militates against the probable beneficial results to be derived from such operation and thus penalize an· employer who stands ready at all times to provide him with such treatment.

[2] Id.—Reasonableness of Refusal—Province of Commission.— Under subdivision (e) of section 11 of the Workmen's Compensation Act, an injured employee cannot secure the benefits of compensation unless he submits to medical and surgical treatment that reasonably might be regarded as offering some benefit, if not entire relief; and it is the duty of the Industrial Accident Commission to determine whether or not the employee's refusal to submit to an operation is reasonable.

[3] Id.—Issues—Evidence—Expert Advice. — In determining the question of whether or not an employee's refusal to submit to an operation is reasonable, the commission is not permitted to· arrive at its conclusion from any preconceived ideas of members of the commission, but, under subdivision (e) of section 11 of the

1.   See 27 **Cal. Jur.** 537.
3.   See 27 **Cal. Jur.** 538.

Workmen's Compensation Act, the finding on this issue must be based upon expert medical or surgical advice.

[4] Id.—Special Treatment—Judicial Notice.—In a hearing to determine compensation for injuries to an employee, the Industrial Accident Commission cannot take judicial cognizance of what is involved in the "Hibbs" or "Albee" treatment, the nature, character, and effects of which are not matters of common knowledge.

[5] Id.—Expert Testimony—Evidence.—The rules of evidence which obtain in hearings before the Industrial Accident Commission, so far as the testimony of medical or surgical experts is concerned, are the same as those which prevail in the trial courts of this state.

[6] Id.—Issues of Fact—Judicial Notice.—In proceedings before the Industrial Accident Commission, where the issue pertains to medical or surgical treatment, the nature, effect, and result of which are the subjects of common knowledge, such matters are within the rule of judicial knowledge; but where the matter is not one of common knowledge, but known only to medical experts, it must be proven by competent evidence just as any other issue of fact.

[7] Id.—Method of Treatment—Evidence—Findings.—In a proceeding before the Industrial Accident Commission to determine compensation for injuries to an employee, who had refused to submit to the "Hibbs" or the "Albee" treatment, which had been recommended and was offered by the employer, where subdivision (c) of section 19 of the Workmen's Compensation Act, relating to the use by the commission of expert testimony in other cases, is not complied with, and there is no competent evidence before the commission as to the nature, character or risk involved in either the "Albee" or the "Hibbs" treatment, and, in fact, no evidence from which the commission could properly find that the refusal of the employee to submit to surgical treatment offered by the employer was not unreasonable, there should be excluded from the award any compensation for disability so far as caused, continued or aggravated by unreasonable refusal of the employee to undergo the recommended treatment.

---

(1) Workmen's Compensation Acts, C. J., p. 98, n. 46. (2) Workmen's Compensation Acts, C. J., p. 98, n. 49 New, p. 117, n. 52 New. (3) Workmen's Compensation Acts, C. J., p. 117, n. 52 New. (4) 23 C. J., p. 60, n. 26, p. 148, n. 81. (5) Workmen's Compensation Acts, C. J., p. 115, n. 32 New. (6) 23 C. J., p. 59, n. 22, p. 60, n. 26, p. 148, n. 81. (7) Workmen's Compensation Acts, C. J., p. 115, n. 37.

4. See 27 Cal. Jur. 482.
5. See 27 Cal. Jur. 582.
6. See 27 Cal. Jur. 582.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission awarding compensation for injuries. Award annulled.

The facts are stated in the opinion of the court.

Roy V. Reppy and E. W. Cunningham for Petitioner.

Warren H. Pillsbury for Respondents.

HAHN, J., *pro tem.*—Upon application of the petitioner, a writ of review was issued by this court for the purpose of reviewing an award made by the Industrial Accident Commission of the state of California, in favor of one Oliver R. Harris and against the Southern California Edison Company, the petitioner herein.

The record includes a stipulation of facts, from which it appears that on March 6, 1923, while in the employ of the petitioner herein as a lineman, Oliver R. Harris fell from a high-tension electric pole, thereby suffering an injury to his back. Hospital and medical attention was promptly furnished by his employer. Within three weeks Harris had recovered sufficiently to engage in light work for his employer, in which work he continued for some four weeks when he suffered a wrench to his back which caused him to desist from further labor. From that time, which was about May 1, 1923, and until his hearing before the Industrial Accident Commission, which took place in February, 1925, Harris was incapacitated for work due to the condition of his back. At intervals during this period of almost two years Harris was examined by some four or five surgical experts, and for limited periods received more or less irregular medical and surgical attention.

It further appears from the record that in May, 1923, an expert surgeon, one Dr. John Dunlop, gave Harris a most careful examination, apparently calling to his aid all that was known to modern surgery in the treatment of such cases. Dr. Dunlop unhesitatingly advised that Harris submit to a surgical operation, which in the doctor's opinion would result in considerable relief if not entire recovery to Harris. A short time after the examination made by

Dr. Dunlop, one Dr. W. W. Richardson, a surgical expert, was called in to examine Harris, and he confirmed the finding of Dr. Dunlop and joined in Dr. Dunlop's recommendation that an operation be performed. Again, in January, 1924, Dr. Dunlop was consulted and upon making a further examination recommended that Harris submit to the proposed surgical operation, which was known in the profession as the "Albee" operation. Also, during the year of 1924, Harris was given careful examination by Dr. H. W. Spiers and Dr. W. B. Bowman, eminent orthopedic surgeons, both of whom recommended that Harris submit to the Albee operation.

In February of 1925, another expert surgeon, one Dr. John C. Wilson, was called in, apparently by the Industrial Accident Commission. His findings in the case corresponded with those of the other experts; however, in the matter of the proposed operation, Dr. Wilson's report contains this statement: "A permanent disability very frequently follows an injury of this type, but I believe that the patient could be improved by treatment. Complete recovery depends entirely upon the treatment that is followed. A spinal fusion by either the Hibbs or Albee method would not in ordinary circumstances be advisable in a case of as long standing as this. In view of the fact that this man is totally disabled and has not, according to his statements, improved with the ordinary conservative treatment, I believe that a spinal fusion should be done in this case. The patient has nothing to lose and everything to gain. He could not be any worse after an operation than he is at the present time, and fixation, as you know, does benefit these cases very much."

It will be noted that while Dr. Wilson advised the operation proposed by the other experts, he attaches a qualification as to its efficacy, based upon the fact that at the time he made his examination and report the case was *one of long standing.* The report made by Dr. H. E. Southworth, assistant medical director of the Industrial Accident Commission, who apparently was in close touch with the case from its inception and who was advised of the findings and recommendations of the various experts called in to examine Harris, also recommended that Harris submit to the proposed operation. The only qualification contained in

Dr. Southworth's report is that found in the following sentence: "It must be borne in mind that a Hibbs or Albee operation is not always followed by prompt and satisfactory relief."

[1] It appears from the record that the petitioner herein repeatedly offered to provide, and urged the recommended operation, but from the outset Harris refused to consent to the operation. Apparently these offers by his employer were more or less coincident with the examinations made by the several experts; hence, Harris must justify his refusal, if at all, upon the conditions as they existed at the time of his first or early refusal, and not upon the conditions as they existed in January, 1925, twenty-two months after the injury occurred and at which time by reason of the "long standing of the case," Dr. Wilson expressed some doubt as to the extent of the beneficial results that might be obtained from the operation at that time. For if the delay in the operation militated against the probable beneficial results, Harris cannot take advantage of his own conduct and thus penalize his employer who stood ready at all times to provide him with such treatment as competent expert medical and surgical authority advised.

Subdivision (e) of section 11 of the Workmen's Compensation Insurance and Safety Act of 1917, page 842, reads as follows:

"No compensation shall be payable in case of the death or disability of an employee if his death is caused, or if and so far as his disability is caused, continued or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, the risk of which is, in the opinion of the commission, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury."

Measured by the provisions of the foregoing section, the petitioner herein urges that the following finding made by the Commission is not supported by the evidence in the record: "3. The refusal of the employee to submit to surgical treatment offered by the employer was not unreasonable."

It must be admitted that there is nothing in the record which can support the conclusion that there was any risk involved in the proposed operation. Aside from the report

of Dr. Wilson, the expert medical and surgical advice offered in evidence is unanimous in the opinion that Harris would benefit by the operation. Some of the experts go so far as to express confidence that there would be an entire recovery from the injury. Dr. Wilson's report, while recommending the operation, does throw some doubt upon the probability of beneficial results, but it must be kept in mind that this doubt is based upon the fact that some twenty-two months had elapsed between the time of the injury and Dr. Wilson's examination, and the fact that an operation had not been performed previous to Dr. Wilson's examination is wholly due to the refusal of Harris.

[2] Apparently the legislature in enacting the compensation law did not intend to permit a person to secure its benefits, unless he submitted to medical and surgical treatment that might reasonably be regarded as offering some benefit if not entire relief; hence, it became the duty of the Commission, under subdivision (e) of section 11 of the act, to determine whether Harris' refusal to submit to the operation was reasonable or not. [3] But in determining this question, which is of a judicial nature, the Commission is not permitted to arrive at its conclusion from any preconceived ideas of the members of the Commission. There must be a finding upon this issue, based upon "expert medical or surgical advice." [4] The only "expert medical or surgical advice" before the Commission, so far as the record discloses, holds to the opinion that the "Albee treatment" or "Hibbs operation" would prove beneficial to Harris even if it did not result in his entire recovery; that no injurious consequences would flow from the operation even if the expectant hopes were not fully realized. There is no suggestion in this "expert surgical and medical advice" in the record that there is any risk involved in the operation, unless as urged by the learned counsel for the respondent, the Commission may take judicial knowledge of what is involved in the operation known as the "Albee" or "Hibbs" treatment. The record nowhere discloses the nature or character of this proposed treatment; nor whether it could be classified as a major or a minor operation; nor is there any evidence to show what if any inconvenience or pain would be suffered by the patient, or to what extent,

if at all, he would be confined to his bed as a result of the operation.

Counsel for respondent concedes that the record furnishes little aid for the determination of these questions, for his brief contains the following statement: "The record is unfortunately meager, so that we are troubled at times with a dearth of evidence upon crucial points. One of the important questions which the record is silent upon, is as to the nature and seriousness of the Hibbs or Albee operation. These matters are within the judicial knowledge of the respondent Commission inasmuch as a considerable number of cases of this sort have come before it in the past. We believe we are justified in informing the court, through its judicial knowledge, of the nature of the operations, and accordingly submit the following statement which has been prepared by the office of the medical director of respondent Commission for this purpose." Following this statement appears a detailed explanation of the nature and character of the operation known as the "Albee" treatment.

We cannot agree with respondent's contention that the Commission may take judicial cognizance of what is involved in the "Hibbs" or "Albee" treatment. [5] The rules of evidence which obtain in hearings before the Industrial Accident Commission, so far as the present instance is concerned, are the same as those which prevail in the trial courts of this state. (*William Simpson Construction Co.* v. *Industrial Acc. Com.*, 74 Cal. App. 239 [240 Pac. 58].)

[6] Where the issue pertains to medical or surgical treatment, the nature, effect, and result of which are the subjects of common knowledge, such matters are within the rule of judicial knowledge. As for instance, the court will take judicial notice of the nature, purpose, and effects of vaccination. (*Viemeister* v. *White*, 179 N. Y. 235 [103 Am. St. Rep. 859, 1 Ann. Cas. 334, 70 L. R. A. 796, 72 N. E. 97].) Also, that syphilis is a serious disease. (*Metropolitan Life Ins. Co.* v. *Goodman*, 10 Ala. App. 446 [65 South. 449].)

But where the matter is not one of common knowledge, but known generally only to medical experts, it must be proven by competent evidence just as any other issue of fact. (15 R. C. L., p. 1129; 23 C. J., p. 148; *Jacobson* v.

*Massachusetts,* 197 U. S. 11 [3 Ann. Cas. 765, 49 L. Ed. 643, 25 Sup. Ct. Rep. 358, see, also, Rose's U. S. Notes]; *Royer* v. *Pennsylvania R. Co.,* 259 Pa. 438 [103 Atl. 276].)

That the nature, character, and effects of the treatments known as the "Hibbs" or "Albee" treatment are not matters of common knowledge cannot well be refuted.

Another answer to respondents contention that the finding in question will have support in the judicial knowledge which the Commission will take as to the "Hibbs" or "Albee" treatment is the fact that the legislature saw fit in adopting the "Compensation Act" to provide that the basis for such a finding must be "expert medical or surgical advice." (Sec. 11, subd. 2, par. (e), Compensation Act.)

[7] It is suggested by respondent that while no testimony was offered on this question at the hearing in the instant case, the Commission was in other similar cases advised by medical authority of the nature and character of the "Hibbs" or "Albee" treatment, and calls attention to subdivision (c) of section 19 of the Compensation Act, which reads as follows:

"(c) The commission may receive as evidence either at or subsequent to a hearing, and use as proof of any fact in dispute, the following matters, in addition to sworn testimony presented in open hearings . . . (7) Excerpts from expert testimony received by the commission upon similar issues of scientific fact in other cases and the prior decisions of the commission upon such issues; provided, however that transcripts of all testimony taken without notice and copies of all reports and other matters added to the record, otherwise than during the course of an open hearing, be served upon the parties to the proceeding, and opportunity be given to produce testimony in explanation or rebuttal before decision is rendered."

But the record does not show that there was a compliance with the provisions of the foregoing section, for manifestly to meet its requirements it would be necessary to attach to or make a part of the record in the instant case any such excerpt of expert testimony received in any other case, and in addition it would be necessary to have it appear in the record that copies of such testimony were served upon the parties in this proceeding.

Hence, the conclusion seems inevitable that for the purpose of supporting the finding in question, there was no competent evidence before the Commission as to the nature, character, or risk involved in either the "Albee" or "Hibbs" treatment, and, in fact, no evidence from which the Commission could properly find that "the refusal of the employee to submit to surgical treatment offered by the employer was not unreasonable." The able brief filed on behalf of the respondent cites a number of cases from other states which deal with the question here involved. However, in examining these cases, we find little of aid for the reason that where the court sustained the refusal of the claimant to submit to the proposed medical or surgical treatment, there is evidence in the record which either shows conclusively or in conflict that the proposed treatment involves risk or suffering. While some of these cases arise in states having provisions similar to subdivision (e) of section 11 of our Compensation Act, others are from states which have no such provision, and the question is considered entirely from the general standpoint of the reasonableness of the claimant's refusal.

In view of the provisions of the California Compensation Act, we do not feel that it will be of aid in the instant case to consider or discuss in detail any of the authorities cited in respondent's brief. For the reasons heretofore indicated, the award is annulled and set aside. The case is referred back to respondent Commission, with the instruction that in making its award, there be excluded therefrom any compensation for disability so far as caused, continued, or aggravated by unreasonable refusal of the employee to undergo the recommended operation.

Conrey, P. J., and Curtis, J., concurred.