[Civ. No. 33654. Second Dist., Div. Five. May 29, 1969.]

LUIS GALLEGOS, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, McCULLOUGH TOOL COMPANY et al., Respondents.

David L. De Loach for Petitioner.

Everett A. Corten, Gabriel L. Sipos, Clopton & Penny and Robert R. Wills for Respondents.

STEPHENS, J.—An employee seeks review and annulment of an award of the Workmen's Compensation Appeals Board.

The appeals board found that the employee sustained industrial injury to his back on December 29, 1967, that he unreasonably refused to submit to surgery, the risk of which was inconsiderable in view of the seriousness of the injury, and therefore, pursuant to the provisions of Labor Code, section 4056,[1] the compensation insurance carrier for the employer was not liable for any medical treatment or temporary disability indemnity after March 19, 1968, or for any permanent disability in excess of the probable disability which would remain after surgery. It concluded that the probable disability would be a restriction from heavy lifting or repetitive bending which rated at 25 percent. The award is limited to compensation for permanent disability of 25 percent together with medical-legal costs of $50.

Petitioner contends that the evidence compels a finding that his refusal of surgery was reasonable, that he is totally disabled and, therefore, the award should have been for 100 percent permanent disability. He also asserts that there is no medical evidence to support the finding that the risk of surgery was inconsiderable in view of the seriousness of the injury or to show the probable permanent disability which would remain after surgery.

The medical record is comprised of the reports of Dr. Hopkins, the treating physician, and Dr. Shepro. Dr. Hopkins reported that following the injury he had treated petitioner for low back pain and shooting pains and numbness in the left foot and leg by hospitalization, traction, and medicines until

---

[1]Labor Code, section 4056 provides: "No compensation is payable in case of the death or disability of an employee when his death is caused, or when and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the appeals board, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury."

March 6, 1968. A report addressed to the insurer under date of March 20, 1968 advised that after an examination of the petitioner on March 6, 1968, the doctor diagnosed his condition as herniation and disc disease of two intervertebral discs and that it was his opinion that petitioner required a lumbar laminectomy with disc removal at two levels. In the report the doctor expressed the further opinion that this type of operation was the only feasible method of returning petitioner to employment and that if the operation were performed it would require one to two weeks of hospitalization followed by approximately four months of temporary total disability. He stated that he had told the petitioner that his condition would be improved by such an operation but that petitioner was very reluctant to proceed and would return in one week for re-examination at which time the doctor would advise the insurer regarding the petitioner's decision.

Dr. Shepro examined the petitioner on April 17, 1968. His report of April 19, 1968, expressed the opinion that petitioner had a herniated intervertebral disc and that surgery appeared to be indicated. In supplemental report he expressed the opinion that petitioner was totally disabled.

At the hearing of his claim the petitioner testified that he was born in Mexico; he had lived in the United States since 1949 except for a short interval in 1957 or 1958; he had been hospitalized in Fresno in 1950 for a prior injury; he would accept surgery but he would like to see some doctors in Mexico and have the surgery there; he was afraid to have the surgery done in this country; Dr. Hopkins had told him surgery was necessary but it would only reduce his pain and he would not be normal for the rest of his days; the doctor told him there was a 2 percent chance of death and a 3 percent chance of paralysis; he wanted the surgery in Mexico because if he should die he wanted to be buried there; if the percentage of risk was higher in Mexico, he presumed that he would get the surgery here.

The opinion of the appeals board noted that both Dr. Hopkins and Dr. Shepro recommended surgery as a means of improving petitioner's condition and that petitioner testified that he was willing to accept surgery but conditioned his acceptance upon the surgery being performed in Mexico. It concluded that this condition was unreasonable and in effect an unreasonable refusal of medical treatment in view of which it was proper to rate permanent disability on the probable disability following surgery.

The board did not state the evidence relied upon for its finding that the risk of surgery was inconsiderable in view of the seriousness of the injury or its finding that probable disability following surgery would be a restriction from heavy lifting and repetitive bending.

██ In respect to the issues raised here, it should first be noted that the employer (or his insurer) has the duty to provide and the correlative right to control medical treatment required to cure or relieve from the effects of industrial injury (Lab. Code, § 4600), the dual purpose of the statute being to effect prompt cure or relief with minimization of the danger of the employee's obtaining unnecessary and extravagant treatment at the employer's expense. (*Zebb* v. *Workmen's Comp. App. Bd.*, 67 Cal.2d 496, 501 [62 Cal.Rptr. 753, 432 P.2d 361]). ██ The employee may on request obtain a change of physician or in a serious case a consulting physician at the employer's expense (Lab. Code, § 4601). ██ In addition, Labor Code section 4605 provides: "Nothing contained in this chapter shall limit the right of the employee to provide, at his own expense, a consulting physician or any attending physicians whom he desires."[2] In view of the rule that compensation statutes are to be liberally construed in favor of extending benefits to the injured employee (Lab. Code, § 3202), we conclude that the term "any attending physicians" includes an operating surgeon selected by the employee.

██ In order to carry out the purpose of effecting prompt cure or relief from industrial injury, the compensation act also provides that the employee is entitled to reimbursement for medical treatment when the employer neglects or refuses to provide prompt treatment (Lab. Code, § 4600) and the employer (or insurer) is entitled to release from liability for compensation when and to the extent that the employee unreasonably refuses treatment and his refusal causes, continues, or aggravates his disability where on the basis of medical opinion it is established that the risk is inconsiderable in view of the seriousness of the injury (Lab. Code, § 4056). The term "compensation" includes every benefit. (Lab. Code, § 3207). Whether there has been aggravation of disability by unreasonable conduct of the employee is an affirmative defense for which the burden of proof rests on the employer. (Lab. Code, § 5705, subdivision (d),)

---

[2] The chapter includes sections 4600 and 4601.

■ It follows from the foregoing that in seeking to terminate or reduce compensation under Labor Code section 4056, the respondent insurer had the burden of showing: (1) that it had made an unequivocal tender of surgery (see *Gildersleeve v. Industrial Acc. Com.*, 212 Cal. 763 [1 P.2d 1] and *O'Neill v. Industrial Acc. Com.*, 91 Cal.App. 121 [266 P. 866]) and that petitioner refused to submit to surgery without good cause (see *Bethlehem Steel Corp. v. Industrial Acc. Com.*, 70 Cal. App.2d 369 [161 P.2d 18]); that the risk of the surgery was inconsiderable in view of the seriousness of the injury; and that surgery would reduce disability to a particular extent. The statute expressly calls for medical opinion to support the issue of risk and it is obvious that the extent of disability with or without surgery is an issue which requires medical evidence.

There is no evidence in the record to show that the insurer ever made a firm tender of surgery to petitioner. However, it appears to be conceded by petitioner that it did. The hearing was had on May 8, 1968. At that time the petitioner indicated that he intended to undergo surgery but wanted to have it performed in Mexico if the risk was no greater there.[3] This constitutes delay, but it cannot fairly be deemed to constitute a refusal to submit to surgery. There is no other evidence in the record which reflects any action by either the petitioner or the insurer and its agents after the date of Dr. Hopkins' examination of petitioner on March 6, 1968. The question of furnishing petitioner with medical services in Mexico was never even explored.

■ Since the record does not show when an unequivocal tender of surgery was made, it cannot be determined how much time elapsed between the tender and the date of hearing. It was at most a little less than six weeks. In *Danziger v. Industrial Acc. Com.*, 109 Cal.App. 71 [292 P. 525], an order terminating the employer's liability was upheld where there was evidence that the applicant had failed to submit to surgery for a period of three years. The court concluded that the intent of the Legislature was that the employee accept tendered treatment shown to be adequate with reasonable diligence. Thus, while an unreasonable delay by an employee in accepting tendered sugery or obtaining it at his own expense

---

[3] The file of proceedings before the board shows that after the hearing his counsel filed a letter under date of May 27, 1968 which stated that petitioner "insists that if he is to undergo surgery that, because of his fear of dying, he have it done in Mexico as he so testified." It does not appear that this was admitted in evidence.

may constitute a refusal to submit to surgery, the record here is insufficient to support such a conclusion.

The award is annulled and the case remanded for further proceedings consistent with the views herein expressed.

Kaus, P. J., and Reppy, J., concurred.