[Civ. No. 2062. Fifth Dist. Dec. 27, 1973.]

CARLOS FLORES, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
STATE COMPENSATION INSURANCE FUND et al., Respondents.

COUNSEL

Fryer, Karr & Millett and Kenneth J. Fryer for Petitioner.

T. Groezinger, James J. Vonk, George S. Bjornsen and Robert A. La Porta for Respondents.

OPINION

GARGANO, J.—This litigation presents a fundamental question. To safeguard his workmen's compensation benefits, must an employee who has sustained a surgically treatable industrial injury and whose employer has denied liability for the injury, submit to surgery offered by a county welfare department if he does not have the financial means to pay for the treatment?

The pertinent facts are undisputed.

Petitioner is a beekeeper's helper who injured his left knee on April 30, 1969, when he fell from a pickup truck into a concrete-lined pit; he continued with his work even though the leg severely pained him. At the end of the day petitioner reported the injury to his employer; he was told to put some hot pads on his knee and he would be all right.

On May 3, 1969, as petitioner was helping his employer load beehives, he felt a pain in the area of his groin; he did not mention the pain to the employer. On the following day petitioner noticed a lump in his groin on the left side. He consulted a Dr. Slepnikoff and was told that he had ruptured himself; the doctor was unable to state that the injury to petitioner's leg was the determining cause of the hernia. One week later a lump appeared on the right side of his groin. Subsequently, petitioner was examined by Dr. Otto Tuschka on behalf of the respondent insurance carrier. Dr. Tuschka reported that petitioner had an inguinal hernia and that in his opinion the injury was not industrial. Thereafter, petitioner was examined by Doctors Guttormsson, Daggett, Moffatt, Kaufman and Argo, and the consensus of this medical opinion was inconclusive as to whether the inguinal hernia was an industrial injury.

On August 24, 1971, petitioner consulted Dr. Clark at the request of the Madera County Department of Public Welfare. Dr. Clark concluded that petitioner had a surgically treatable left and right inguinal hernia and that he could not perform hard labor at that time. After that examination petitioner declined an offer of an operation by the welfare department because "he did not want to become a welfare patient."

Petitioner's application for adjudication of claim was filed with the Workmen's Compensation Appeals Board on October 3, 1969; the hearing commenced on November 13, 1972. At the hearing it was revealed for the first time that petitioner did not feel any pain in his groin area until three days after the fall from the pickup truck and that he felt the pain as he was helping his employer load beehives. In addition, Dr. Tuschka testified that while a person can develop a hernia gradually through a degenerative process, the development can be accelerated by a specific incident like lifting or falling. Petitioner was granted leave to file a second application on the basis of the new development, and the applications were consolidated for hearing.

At the conclusion of the consolidated hearing, the referee found that petitioner sustained a bilateral hernia on May 3, 1969, that the injury occurred in the course of his employment with respondent John C. Allred, that the injury caused continuing temporary total disability from May 4, 1969, to November 27, 1972, and thereafter, that respondent's insurance carrier failed to furnish medical treatment to relieve the effects of the injury after notice of the need, that further medical treatment was required, and that petitioner's claim for workmen's compensation resulting from his second injury was not barred by the statute of limitations. The referee, inter alia, awarded petitioner temporary disability indemnity payable at the rate of $62.50 per week beginning May 4, 1969, through November 27, 1972, and thereafter.

On February 20, 1973, respondents filed a petition for reconsideration and the petition was granted. In its decision after reconsideration the Workmen's Compensation Appeals Board upheld the referee's finding that petitioner had sustained a bilateral hernia and that the injury occurred in the course of his employment but, by a two to one majority, decided that the period of temporary disability terminated on September 15, 1969, because petitioner had refused to submit to the surgery offered by the Madera County Department of Public Welfare. The board concluded that this refusal was unreasonable and fell within the ambit of section 4056 of the Labor Code. The section provides: "No compensation is payable in case of the death or disability of an employee when his death is caused, or when and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the appeals board, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury."

Preliminarily, we are confronted with two dubious rulings. While the board determined that petitioner refused to submit to surgery offered by

the Madera County Department of Public Welfare on or about September 15, 1969, it seems very clear from the record that the surgery was not offered to petitioner until sometime after August 26, 1971; petitioner not only testified that he consulted Dr. Clark in August of 1971, but his testimony was corroborated irrefutably by the doctor's report to the welfare department; this report was dated August 26, 1971, and stated that the doctor examined petitioner two days earlier. The board apparently gave undue weight to petitioner's inadvertent statement that the Madera County Department of Public Welfare offered him a hernia operation after he was examined by Dr. Slepnikoff in September 1969. A reading of Dr. Slepnikoff's letter shows that petitioner visited him on May 4, May 16 and June 3, 1969, not in September of that year.

Furthermore, the board terminated petitioner's temporary disability payments as of September 15, 1969, on the ground that he refused to submit to surgery offered by the Madera County Department of Public Welfare even though respondents proffered no evidence to show that the surgery and hospital treatment offered were at least equal to that which petitioner was entitled to receive from his employer. ▮ We do not suggest that surgical and hospital treatment offered through a county welfare department necessarily is inferior to that which can be obtained through private means, but if respondents wished to rely on that defense it was at least incumbent upon them to offer some evidence as to the nature, caliber and extent of the surgical and hospital treatment petitioner refused in order to show that the refusal was unreasonable.

We do not find it necessary to concern ourselves further with these rulings. We turn instead to the grave questions which have arisen by virtue of the board's decision, because it apparently is grounded on the sweeping proposition that under section 4056 of the Labor Code an employee who sustains an industrial injury and whose employer has denied liability for the injury must either accept medical or surgical treatment offered by an independent third party, such as a relative, friend or charity, or run the risk of forfeiting his workmen's compensation benefits.

▮ Section 4056 obviously was adopted by the Legislature to protect employers who tender medical or surgical treatment to their injured employees by making certain that workmen will be returned to the labor market as quickly as possible; its plain purpose is to prevent employees with treatable injuries from resorting to unfounded beliefs, ungrounded fears or personal idiosyncrasies or convictions to reject proffered treat-

ment. (See 2 Hanna, Cal. Law of Employee Injuries and ·Workmen's Compensation (2d ed. 1966) § 16.05[3][e].) Furthermore, the section does not state that every refusal of medical or surgical treatment shall result in a forfeiture; it provides that a forfeiture occurs only if the risk of treatment is "inconsiderable in view of the seriousness of the injury," and then delegates to the board the duty of resolving any dispute which might arise in this respect. If the forfeiture provisions of section 4056 apply to a case where an employer has denied liability for the injury, how can an employee who in good faith believes that the risk of medical or surgical treatment is considerable have that issue resolved promptly? Finally, section 4056 is a part of a separate chapter which deals exclusively with medical examinations requested by the employer of the injured employee. In fact, all of the sections in that chapter which precede sections 4056 pertain to the duty of the employee to cooperate with his employer regarding such medical examinations. Suddenly to construe this section to apply to medical and surgical treatment offered by someone other than the employer is not consonant with ordinary doctrines of statutory construction.

█ In our view, section 4056 contemplates an admitted or adjudicated industrial injury, and a tender of medical or surgical treatment by the employer himself is an essential prerequisite to any possible forfeiture under that section. As the California Supreme Court stated in *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 569, 577 [68 Cal.Rptr. 164, 440 P.2d 236]: "Limitations provisions in the workmen's compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in a right being lost before it accrues."

The remaining question is whether the board's decision is sustainable under the mitigation doctrine applicable in tort actions. According to this doctrine, sometimes referred to as the doctrine of avoidable consequences, a person injured by the wrong of another must mitigate the damages if reasonably possible, and he is bound, at least to the extent of his financial ability, to exercise reasonable diligence in procuring medical or surgical treatment to effect a speedy and complete recovery.

We have concluded that the answer to this question is in the negative. First, the board's decision, to the extent that it sets a precedent which would require an employee who has sustained a compensable industrial injury to submit to surgical treatment furnished through a county welfare department, contravenes the public policy of this state. Experience teaches

us that innumerable good faith disputes can and do arise as to the cause, nature and extent of alleged industrial injuries. Experience also teaches us that a large segment of the working population is not sufficiently affluent to attain and to pay for adequate medical aid from personal financial resources. To hold that workmen who incur industrial injuries and are in need of medical or surgical treatment and do not have the financial ability to obtain such treatment must resort to public welfare or risk the loss of further medical aid and disability payments from their employers would either compel the injured workman to forego the prompt treatment to which he is entitled or would foist upon the general public, in the first instance, a responsibility the California Legislature has declared belongs to industry. As was said in *Union Iron Wks.* v. *Industrial Acc. Com.,* 190 Cal. 33, 39 [210 P. 410]: "The underlying principle upon which the Workmen's Compensation Act rests is, as its title indicates, the providing of compensation to an employee for injuries resulting from his employment. It emanates from the economic thought that personal injury losses incident to an industry is a part of the costs of production to be borne, just as the depreciation and replacement of a machine is borne, by the industry itself, which compensation will be included in the cost of the product of the industry. (*Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686 [151 Pac. 398.)"

Second, under the workmen's compensation law an employee who incurs an industrial injury has the statutory right to receive medical or surgical treatment at the expense of his employer; this right is " '. . . a part of the whole compensation due to the employee as the result of his injury.' " (*Zeeb* v. *Workmen's Comp. App. Bd.,* 67 Cal.2d 496, 500-501 [62 Cal.Rptr. 753, 432 P.2d 361]; *Union Iron Wks.* v. *Industrial Acc. Com., supra,* 190 Cal. 33, 39-40.) In the broad sense, the employee also is the third party beneficiary of the employer's insurance contract. (Lab. Code, § 3753.) Yet, to uphold the board in this case, not only would we have to equate the rights of workmen under a salutary statutory scheme enacted for their benefit with the right of a person to recover damages for the wrong of another,[1] but we would have to extend the mitigation doctrine to a case where the employee does not have the financial ability to procure his own medical treatment by compelling him to submit to the indignity of becoming a public ward. We do not believe that the Legislature intended

---

[1]See *Solari* v. *Atlas-Universal Service, Inc.,* 215 Cal.App.2d 587, 600 [30 Cal. Rptr. 407], where it is explained that compensation benefits are not "damages" for injury because the purpose of workmen's compensation is to rehabilitate, not to indemnify.

this harsh result when it adopted the comprehensive workmen's compensation law of this state, nor does such a result find support in the court decisions. On the contrary, an eminent writer on the subject of workmen's compensation has pointed out that while an employee has the right to procure medical treatment at his employer's expense if the latter neglects or refuses to provide it, the workmen's compensation law is silent as to any duty on the employee to secure treatment on his own, and no California case has gone so far as to hold that the employee should be penalized for his failure to do so. (See 2 Hanna, Cal. Law of Employees Injuries and Workmen's Compensation (2d ed. 1966) § 16.05[5].)

The case of *Granado* v. *Workmen's Comp. App. Bd.*, 69 Cal.2d 399, 406 [71 Cal.Rptr. 678, 445 P.2d 294], though not entirely in point, is helpful. In that case the Supreme Court held that medical treatment for an industrial injury which aggravates a pre-existing condition is not apportionable. The court stated: "If medical expense reasonably necessary to relieve from the industrial injury were apportionable, a workingman, who is disabled, may not be able to pay his share of the expenses and thus forego treatment. Moreover, the uncertainties attendant to the determination of the proper apportionment might cause employers to refuse to pay their share until there has been a hearing and decision on the question of apportionment, and such delay in payment may compel the injured workingman to forego the prompt treatment to which he is entitled."

Respondents rely on *Marshall* v. *Ransome Concrete Co.*, 33 Cal.App. 782 [166 P. 846], *Danziger* v. *Industrial Acc. Com.*, 109 Cal.App. 71 [292 P. 525], and *Gallegos* v. *Workmen's Comp. App. Bd.*, 273 Cal.App.2d 569 [78 Cal.Rptr. 157], for the opposite proposition. These cases are distinguishable and are not authoritative.

*Marshall* is an early case and was not decided under the present comprehensive workmen's compensation law of this state. It was decided under the Roseberry Act of 1911, and the court merely suggested that the injured employee had some duty "to mitigate the trouble and promote recovery." It is one thing to suggest that an employee who has the financial means to procure his own medical or surgical treatment should do so in order to shorten the period of his disability, but it is quite another matter to declare unequivocally that an employee who has incurred a compensable industrial injury and who does not have the money to pay for the surgery required to treat the injury must resort to public aid to protect his statutory and contractual rights.

In *Danziger* the employee refused the employer's tender of medical treatment.

In *Gallegos* the employee had sustained an admitted industrial injury to his back, and the Workmen's Compensation Appeals Board determined that the compensation insurance carrier was not liable for any medical treatment or temporary disability indemnity after March 19, 1968, because the employee unreasonably refused to submit to surgery, the risk of which was inconsiderable in view of the seriousness of the injury. In reversing the board's decision, the court held that a six-week delay in undergoing surgery was not sufficient to constitute a refusal to submit to surgery. It is significant that the court stated that: ". . . the respondent insurer had the burden of showing . . . that it had made an unequivocal tender of surgery [citations] and that petitioner refused to submit to surgery without good cause [citation]; that the risk of the surgery was inconsiderable in view of the seriousness of the injury; and that surgery would reduce disability to a particular extent." (*Gallegos* v. *Workmen's Comp. App. Bd., supra,* 273 Cal.App.2d 569, 574.)

We do not censure an insurance carrier for seeking to protect itself against the added liability which could flow from its denial of medical treatment to a disabled employee if it is later determined that the disability was caused by an industrial injury. Nor do we declare, unequivocally, that we believe that the mitigation doctrine is never applicable to a workmen's compensation claim; it is conceivable that circumstances could arise where justice and equity would dictate some duty on the part of the employee "to mitigate the trouble and promote recovery." (*Marshall* v. *Ransome Concrete Co., supra,* 33 Cal.App. 782, 786.) We hold that the carrier, although it may have acted in good faith, cannot gain such protection at the employee's expense and in derogation of his statutory rights by compelling him to become a recipient of public aid.

In his dissent our colleague has expounded forcefully the opposite viewpoint. A few answering comments are appropriate.

The dissent states that we have not cited any authority for the proposition that the doctrine of avoidable consequences has no application to the facts of this case. It is significant that the dissent, likewise, does not cite, nor has our research uncovered, any reported decision which has applied the doctrine in a tort action to the extent of requiring a person to resort to the generosity of his friends or relatives or to public welfare for essential medical or surgical treatment.

Our colleague also challenges our statement that under the workmen's compensation law an employee who incurs an industrial injury has a statutory right to receive medical or surgical treatment at the expense of the employer; he suggests that "the right to benefits is inchoate and does not ripen into a duty upon the employer to pay them until the litigation

to determine compensability has been concluded." Regardless as to how the employee's right to compensation benefits is categorized, the right emanates from the workmen's compensation law and is statutory; while the employee may have the burden of proving that his injury was incurred in the course and scope of his employment, once he has met that burden the benefits are fixed as of the date of the injury.

The *ratio decidendi* of the dissent is based on the petitioner's refusal to accept the medical and surgical treatment offered by the welfare department, and on the fact that he already may have been on welfare when he declined the offer. However, the necessary implication of the dissenting opinion is not limited to actual refusal to accept such offer. On the contrary, it would foist upon the injured employee the affirmative duty of seeking medical or surgical treatment from local or state welfare agencies. Furthermore, in this case it is very likely that petitioner was on welfare because the employer refused to provide the essential medical and surgical treatment in the first instance. As our Supreme Court stated in *Zeeb* v. *Workmen's Comp. App. Bd., supra,* 67 Cal.2d 496, 501, "[t]he employer's refusal to provide adequate and necessary medical care, whether or not in good faith, may impose a great hardship upon an employee, who due to the injury frequently is without funds to properly support himself and his family or is without funds to obtain the necessary care." To set a precedent which would require a conscientious workman, who has striven diligently to support his own family, to accept a gift from a friend or relative, no matter how generous the gift may be, or to resort to public welfare in order to cure an injury he believes in good faith was incurred in the course of his employment would add unduly to the hardship and would shock the conscience.

Respondents' final argument is that the board's decision must be upheld because there was an undue delay between the filing of petitioner's application for adjudication of claim and the date of the hearing.

The record does not show the reason for the delay; it shows only that respondents moved for a dismissal and the motion was denied. The board's decision was not based on the delay; it was predicated on the sole premise that petitioner had refused to submit to surgery offered by the welfare department.

The decision of the appeals board is annulled, and the cause is remanded for further proceedings consistent with the views expressed herein.

Franson, J., concurred.

**BROWN (G. A.), P. J.,** Concurring and Dissenting.—

There is no suggestion in this case that the workmen's compensation carrier did not have legitimate litigable defenses to petitioner's claim for compensation based on a lack of connection between the industrial injury to petitioner's left knee and a subsequently claimed bilateral inguinal hernia, as well as other matters. The compensation carrier asserted these defenses in good faith. The conflicting testimony of eight doctors and petitioner's own confused and contradictory stories attest to that fact.

Had the carrier prevailed, it would not have been responsible for the cost of a hernia operation or the three-year period of disability between September 15, 1969, and November 27, 1972. Nevertheless, the majority reaches the anomalous conclusion that the insurance carrier, in order to protect itself from further liability, must, prior to the outcome of the litigation, offer to pay the cost of treatment for the injury which is the very subject of the dispute.

In my opinion, Labor Code section 4056 and the doctrine of avoidable consequences placed a duty upon petitioner to accept treatment offered from third party sources, the risk of which would have been inconsiderable and which treatment would have promptly cured his condition and eliminated the source of the disability. I do not agree that the doctrine of avoidable consequences (mitigation of damages) limits the duty of one injured to those situations where the injured party "is bound, at least to the extent of his financial ability, to exercise reasonable diligence in procuring medical or surgical treatment to effect a speedy and complete recovery."

The rule of avoidable consequences imposes a duty on a person injured to use reasonable efforts under all the circumstances to procure and submit to reasonable medical attention if the nature of the injury requires it and such medical attention is available to him. (25 C.J.S. §§ 32, 36.) Personal financial ability is merely one factor. I am not prepared to hold, as does the majority, that under all circumstances it is, as a matter of law, unreasonable to require an injured workman to undergo curative treatment because it is made available to him by a county hospital.

Labor Code section 4056 speaks in terms of an unreasonable refusal to submit to medical treatment; it does not refer only to medical treatment offered by the employer. To interpret the language of that section to require an offer of medical treatment by the employer is to obscure the obvious purpose of the Legislature: to prevent an employee from benefiting

by his own refusal of treatment. In my opinion, the Legislature did not intend to render traditional notions of avoidable consequences inapplicable to workmen's compensation. If it did so intend, it would have been much more explicit.

Support for this conclusion is found in sections complementary to section 4056. Section 4050 provides that an injured employee must submit to a medical examination when requested to do so by the employer. Section 4053 declares that when such an examination is requested by the employer, the employee must submit thereto, and if he refuses to do so or otherwise obstructs the examination his right to benefits is suspended. Section 4054 makes a similar provision when a medical examination is requested by the appeals board or its referee. Section 4056, however, refers to a refusal to submit to any medical treatment and does not confine itself solely to medical treatment offered by the employer. Accordingly, in view of the Legislature's specific mention of "employer" in complementary sections, it cannot be said that the omission of such language from section 4056 was merely inadvertent. Rather, it is readily inferable that by this omission, the Legislature manifested its intention to cover situations analogous to the case at bench. For it is contrary to the state's public policy to allow a person to idly sit by and draw benefits which are not essential to his well being. (See 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1966) § 16.05[3][a]; see also Welf. & Inst. Code, § 17200.) A contrary conclusion would allow the employee to take advantage of his own misconduct. (See *South. Cal. Edison Co.* v. *Indus. Acc. Com.* (1925) 75 Cal.App. 709, 713 [243 P. 455].)

The decision herein permits a workmen's compensation claimant to do nothing by way of self-help; it authorizes an injured employee to take the arbitrary position that he will voluntarily remain disabled and unemployed unless and until the workmen's compensation carrier arranges for a medical cure. (Lab. Code, § 4600; *Marshall* v. *Ransome Concrete Co.* (1917) 33 Cal.App. 782, 786 [166 P. 846]; *Danziger* v. *Industrial Acc. Com.* (1930) 109 Cal.App. 71, 74-75 [292 P. 525].) If a workmen's compensation carrier is required to make such an advancement of the costs of hospital and surgical treatment and the cause ultimately should be resolved in its favor, the amount thereof would be a nonreimbursable gift to the claimant. The workmen's compensation law does not require the carrier to so act at its peril or direct that it be penalized for exercising its legal right to put a claimant to his proof.

It is evident that the real concern of the majority is that the medical facilities and services offered petitioner were by the Madera County

Department of Public Welfare and that it would be demeaning to require him to suffer the indignity of receiving medical care from that source.[1] The language of the opinion clearly restricts its operation to the facts presented and does not purport to extend its holding to situations wherein the claimant does have the private resources or insurance to pay for medical services and hospitals of his choice or under current Medi-Cal programs may be able to make a choice of private treatment; and if the court were confronted with the latter situations, surely it would not be so solicitous as to not require that the claimant cure his condition by self-procured medical treatment. If this conclusion be correct, it demonstrates that the majority in fact believes the doctrine of avoidable consequences is applicable to workmen's compensation cases, and that the reason for the decision herein is not the inapplicability of that doctrine but that the curative services were from a welfare department. An immutable legal principle should not thus be emasculated by such a minor factual distinction.[2]

The majority states that "under the workmen's compensation law an employee who incurs an industrial injury has the statutory right to receive medical or surgical treatment at the expense of his employer; . . ." The statement is inaccurate. The right to benefits is inchoate and does not ripen into a duty upon the employer to pay them until the litigation to determine compensability has been concluded. The opinion then infers that these supposed rights somehow modify well-established principles of mitigation placing a duty upon the one injured to take reasonable action to ameliorate or cure the disabling condition. No authority is cited for this principle, and I believe its pronouncement in this case in order to justify the conclusion that this indigent claimant did not have to mitigate damages by accepting

---

[1]However, the record indicates that petitioner had been on public welfare since the fall of 1969, which obviously would not have been necessary had he accepted the operation. In a sense refusing the operation caused a continuation of the alleged demeaning effect of accepting welfare when if he had accepted the medical services, he would have been able to go back to work. It is difficult to understand how accepting an operation from welfare by one already on welfare could add to whatever humiliation one may already be suffering, which reflects on the reasonableness of his refusal to have the operation.

[2]In this connection, it should also be pointed out that county hospital services are not necessarily "charity." Health and Safety Code sections 1473 and 1474 declare that the recipient of county hospital benefits is liable for the costs thereof. County officials have a duty to collect these costs (*Reichle* v. *Hazie* (1937) 22 Cal.App.2d 543, 547 [71 P.2d 849]), and in pursuit of that duty the county may obtain a lien against the patient's property. (See Welf. & Inst. Code, §§ 17109, 17400-17409.) Further, Labor Code section 4600 provides that the employer is liable for such expenses when the injury is work related, and the appeals board may declare a lien against the award for the costs of treatment. (Lab. Code, § 4903, subd. (b).)

free medical and hospital care is an unwarranted and unsupportable inroad into the well-established principles relating to mitigation of damages.

I do not share the trepidations of the majority about the quality of county hospital facilities and services; nor would requiring that such services be accepted by a claimant result in a shift of the ultimate financial responsibility therefor from the workmen's compensation carrier to the welfare department of the county.

The latter conclusion necessarily flows from the fact that the person or institution, whether public or private, rendering such services would have a right of reimbursement from the carrier in the event the claimant should ultimately prevail. (See fn. 2, *supra*.)

As to the adequacy of the hospital and medical services, the claimant is fully protected by requiring that the surgical or hospital treatment offered be at least equal to that which the claimant is entitled to receive from his employer should he ultimately prevail.

In the case at bench, the workmen's compensation carrier presented no evidence whatsoever on the issue of equivalency and adequacy of services and facilities. The burden is on the carrier to show by evidence that such equality existed. In the absence of such evidence, the board's conclusion that the petitioner's refusal to accept such services was unreasonable is not supported by the evidence. For this reason I concur that the decision must be annulled but would remand the case to the Workmen's Compensation Appeals Board for the purpose of receiving evidence and making a finding on the issue of whether the surgical or hospital treatment offered by the Madera County Department of Public Welfare was at least equal to that which the petitioner would have been entitled to receive from his employer and for further proceedings consistent with the views expressed herein.

A petition for a rehearing was denied January 24, 1974, and the opinion was modified to read as printed above. Brown (G. A.), P. J., was of the opinion that the petition should be granted. The petition of respondent State Compensation Insurance Fund for a hearing by the Supreme Court was denied March 13, 1974.