[No. A063830. First Dist., Div. Four. June 21, 1994.]

JANET THOMPSON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CITY AND
COUNTY OF SAN FRANCISCO, et al., Respondents.

## COUNSEL

Kathryn E. Ringgold for Petitioner.

Louise H. Renne, City Attorney, Dan Maguire and James H. Cumming, Deputy City Attorneys, for Respondents.

## OPINION

**PERLEY, J.**—The case before us presents the question of whether workers' compensation benefits may be denied because a worker who has died from a stroke contributed to his underlying hypertension through a lack of diligence in procuring medical treatment.

Petitioner Janet Thompson is the widow of the decedent Jack Thompson. Thompson suffered a stroke and died at the age of 45. He had been employed by the City and County of San Francisco (City) for 18 years prior to his death. For the first 8 years, he was a counselor and for the following 10 years, a juvenile probation officer. Most recently in his career, he served as a senior probation officer where the stress of the job was considerably enhanced.

In 1987, when Thompson underwent a brief hospitalization for a broken arm, it was discovered that he suffered from hypertension. He was discharged from the hospital with instructions regarding medication for high blood pressure. In 1988 when he returned to the hospital for further arm surgery, the admission interview and history noted that Thompson had a history of hypertension "with poor medical compliance." A further medical note stated that his hypertension was controlled by the medication, Normodyne.

On January 28, 1992, Thompson suffered a subdural hemorrhage while driving his car to work. This resulted in a minor traffic accident and Thompson was taken to a hospital where he died three days later. He left a wife and two dependent children.

At a hearing to determine in part whether the death arose out of and in the course of employment, petitioner testified that at the time her husband was hospitalized she was not informed that he had hypertension. However, Thompson discussed that fact briefly with her. He took medication for a while and had reactions which she could not recall specifically. She did not keep after him to take his medication because she did not understand that it

was necessary. It was her impression that the hypertension was related to his broken arm and would be shortlived.

Three senior probation officers testified to the long hours and difficult case load that Thompson's job entailed. Further details of job stress were furnished to Dr. Glenn Malley by petitioner. The day before he died Thompson told an associate that "he had never been under such stress before." Petitioner also told Dr. Malley that her husband probably did not eat too well. He liked fatty foods and had been a smoker for 25 years. She described him as "always being heavy." His father had died of a stroke at age 84 and his 71-year-old mother had hypertension. Thompson had stopped taking medication for hypertension after a month because of the side effects.

Dr. Malley was of the opinion that job stress had contributed to decedent's hypertension. Dr. Malley's conclusion that job stress "aggravated his essential hypertension to a precipitative point to cause his stroke" was based on three factors. First, Dr. Malley pointed to the research which concluded that emotional stress aggravates hypertension, a conclusion he acknowledged was not universally accepted. Secondly, Dr. Malley pointed to the fact that at Thompson's second hospitalization the doctor had noted increased job stress and had increased the prescription of Normodyne. Thirdly, Dr. Malley noted that Thompson's life except for his job was not stressful and that the job was by all descriptions a stressful one.

Dr. John B. O'Brien, in reporting on the death of Thompson to the City's claims supervisor, agreed that the automobile accident played no part in the stroke that killed Thompson. In responding to the question of whether Thompson's death was a result of work-related stress, Dr. O'Brien reported his opinion that the cause of essential hypertension had not been shown in scientific studies to be related to emotional stress. However, he viewed the important question of the case to be the effect of Thompson's failure to take any antihypertension medication rather than the effect of emotional stress in general. "It is certainly conceivable that if Mr. Thompson had not ignored his doctor's advice and had taken his medication that the effects of his hypertension condition in his heart and secondarily in his cardiovascular system would have been less and he would have lived longer. The fact that Mr. Thompson refused to take his medication and to otherwise follow his doctor's advice was, in other words, a proximate cause of his death. . . . Mr. Thompson's refusal to treat his hypertension directly led to his death and, in my opinion, it is not medically probable that his work activities played any role in this process."

The workers' compensation judge (WCJ) found that Jack Thompson died as a proximate result of cumulative injury to his cardiovascular system

arising out of and occurring in the course of his employment and ordered the payment of death benefits. In explaining her decision, the WCJ wrote: "The overwhelming evidence presented persuades me that Mr. Thompson worked under increasing stresses for a few years prior to his death. Dr. Malley plausibly suggests that the stress aggravated his underlying hypertension to a point that the cerebral hemorrhage occurred. Although there are clearly two schools of thought on this issue, Dr. Malley's was the most persuasive to me, particularly in view of the unrefuted evidence of the stressful nature of applicant's employment."

The WCJ then commented on the application of Labor Code section 4056 which provides for the forfeiture of benefits if an employee's death is proximately caused by an unreasonable refusal to submit to medical treatment. Citing *Flores* v. *Workmen's Comp. Appeals Bd.* (1973) 36 Cal.App.3d 388 [111 Cal.Rptr. 424], the WCJ accepted the proposition that this section encompasses forfeiture of benefits if the employee fails to mitigate damages to the extent reasonably possible by procuring medical treatment. However, the WCJ concluded that the employer had not met the burden of proof on this affirmative defense. Reviewing the evidence of Mr. Thompson's failure to be treated for hypertension, the WCJ found that the evidence "does not establish a refusal to accept treatment, nor does it establish an unreasonable refusal to mitigate the effects of elevated blood pressure. To the contrary, it reflects that applicant did attempt to address elevated blood pressure readings through nonpharmacological means. He also accepted the use of hypertensive medications, although his compliance was apparently poor in that he forgot to take medications. He also had adverse reaction to such medications. Thus, it cannot be said that applicant acted unreasonably in failing to procure medical treatment to effect a complete recovery from elevated blood pressure. The mitigation doctrine does not apply in this case."

The City sought reconsideration solely on the issue of whether Mr. Thompson's failure to treat his hypertension precluded death benefits. The Workers' Compensation Appeals Board (Board) found "that decedent's death is the proximate result of his failure to exercise reasonable diligence in procuring medical treatment for his hypertension, and therefore his death is non-compensable pursuant to Labor Code section 4056."

At the request of petitioner, we issued a writ of review.

### ANALYSIS

Labor Code section 4056 provides: "No compensation is payable in case of the death or disability of an employee when his death is caused, or when

and so far as his disability is caused, continued, or aggravated, by an unreasonable refusal to submit to medical treatment, or to any surgical treatment, if the risk of the treatment is, in the opinion of the appeals board, based upon expert medical or surgical advice, inconsiderable in view of the seriousness of the injury."

■ "Section 4056 obviously was adopted by the Legislature to protect employers who tender medical or surgical treatment to their injured employees by making certain that workmen will be returned to the labor market as quickly as possible; its plain purpose is to prevent employees with treatable injuries from resorting to unfounded beliefs, ungrounded fears or personal idiosyncrasies or convictions to reject proffered treatment." (*Flores* v. *Workmen's Comp. Appeals Bd.*, *supra*, 36 Cal.App.3d at pp. 392-393.) For example, in *Martin* v. *Industrial Acc. Com.* (1956) 147 Cal.App.2d 137 [304 P.2d 828], an employee suffered a ruptured spleen in a fall at work. He refused a blood transfusion because of his religious beliefs, stating that he would refuse the transfusion even if it meant the loss of his life. In *Reynolds* v. *City of San Carlos* (1981) 126 Cal.App.3d 208 [178 Cal.Rptr. 636], an employee refused corrective surgery on his knee recommended by his treating physician and a consultant who predicted the employee's chance for recovery was 98 percent if surgery were performed. The employee stated that " 'he was not inclined to go for surgery, that he is afraid of it, that he wanted a 100% guarantee for success since it was his body.' " (*Id.* at p. 218.) Labor Code section 4056 was found applicable in both instances.

In *Flores*, the case relied upon by the Board and the City, an employee suffered a hernia in the course of his employment. The employer denied liability and did not offer medical or surgical treatment. The employee refused to submit to surgery offered by a county welfare department. The Board held that compensation was forfeited on the ground that the refusal was unreasonable and fell within the provisions of Labor Code section 4056. The reviewing court held that section 4056 did not apply, explaining: "In our view, section 4056 contemplates an admitted or adjudicated industrial injury, and a tender of medical or surgical treatment by the employer himself is an essential prerequisite to any possible forfeiture under that section. As the California Supreme Court stated in *Fruehauf Corp.* v. *Workmen's Comp. App. Bd.*, [1968] 68 Cal.2d 569, 577 []: 'Limitations provisions in the workmen's compensation law must be liberally construed in favor of the employee unless otherwise compelled by the language of the statute, and such enactments should not be interpreted in a manner which will result in a right being lost before it accrues.' " (*Flores* v. *Workmen's Comp. Appeals Bd.*, *supra*, 36 Cal.App.3d at p. 393.)

The *Flores* court, however, went on to enunciate the theory on which the Board in the instant case decided that benefits were forfeited. "The remaining question is whether the board's decision is sustainable under the mitigation doctrine applicable in tort actions. According to this doctrine, sometimes referred to as the doctrine of avoidable consequences, a person injured by the wrong of another must mitigate the damages if reasonably possible, and he is bound, at least to the extent of his financial ability, to exercise reasonable diligence in procuring medical or surgical treatment to effect a speedy and complete recovery." (*Flores* v. *Workmen's Comp. Appeals Bd.*, *supra*, 36 Cal.App.3d at p. 393.) After explaining why the doctrine did not apply to require an employee to resort to public welfare or risk the loss of benefits, the court stated that it did not declare, "unequivocally, that we believe that the mitigation doctrine is never applicable to a workmen's compensation claim; it is conceivable that circumstances could arise where justice and equity would dictate some duty on the part of the employee 'to mitigate the trouble and promote recovery.'" (*Id.* at p. 396, quoting *Marshall* v. *Ransome Concrete Co.* (1917) 33 Cal.App. 782, 786 [166 P. 846].)

The employee in *Marshall* as in *Flores* was not precluded from compensation since the employee in *Marshall* could not afford to pay for the operation which, in any event, was not indisputably beneficial for the medical problem.

■ No case has been cited in which the doctrine of "avoidable consequence[s]" has actually been applied to deny workers' compensation benefits to an employee. Despite the dictum of *Flores* and *Marshall*, it is extremely doubtful that it could ever be applied. Prosser and Keeton suggest "that the doctrines of contributory negligence and avoidable consequences are in reality the same, and that the distinction which exists is rather one between damages which are capable of assignment to separate causes, and damages which are not." (Prosser & Keeton on Torts (5th ed. 1984) § 65, p. 459.) Labor Code section 3708 expressly abolishes the common law defenses of contributory negligence, assumption of risk and the negligence of a fellow servant. If the stroke was caused by the stress of Mr. Thompson's work and thus arose out of and occurred in the course of his employment, benefits cannot be forfeited because of the negligence of Thompson which contributed to the fatal event.

Petitioner here argues that the City did not meet its burden of showing that Mr. Thompson acted unreasonably or that his failure to take medications to control his blood pressure proximately caused his stroke—requirements for the application of section 4056. (See *Gallegos* v. *Workmen's Comp. App. Bd.* (1969) 273 Cal.App.2d 569, 573-574 [78 Cal.Rptr. 157].) There was no

evidence from the physicians who treated Mr. Thompson at the time of his hospitalizations in 1987 and 1988 as to what was said to Mr. Thompson about the necessity of taking medication or about the possibility of taking other medications if the one prescribed produced undesirable side effects. There was no evidence that Mr. Thompson received any advice about his diet, smoking or stress except for salt reduction and, as to that, there is no evidence that Mr. Thompson did not reduce his salt intake. Dr. O'Brien wrote that a medical regimen could have been found to treat Mr. Thompson and normalize his blood pressure, which would have produced no side effects and no risk to him. However, there was no evidence that Mr. Thompson knew this. As to the issue of proximate cause, Dr. O'Brien stated that it was "certainly conceivable" that had Mr. Thompson taken medication, the effects of hypertension would have been less and he would have lived longer. Arguably that opinion, couched in speculative language, is not substantial evidence of proximate cause. Dr. O'Brien's opinion seems to have been as much rooted in his opinion that stress does not effect hypertension as in his opinion as to proximate causation. The Board apparently did not accept that opinion as to the effect of stress nor was this an issue raised on the petition for reconsideration. Rather the Board relied upon an incorrect interpretation of Labor Code section 4056 and on the doctrine of contributory negligence.

While petitioner presents a strong argument on the facts, we do not rest our decision on this argument but on the ground that the doctrine of avoidable consequences, being an aspect of contributory negligence, does not apply to workers' compensation claims. Labor Code section 4056 does not apply in this case because the "essential prerequisites" articulated in *Flores* were not met. At the time Mr. Thompson's high-blood pressure was discovered and medication prescribed, there was no "admitted or adjudicated industrial injury" and no "tender of medical . . . treatment by the employer himself."

The decision of the appeals board is annulled and the cause is remanded for the award of death benefits.

Poché, Acting P. J., and Reardon, J., concurred.

A petition for a rehearing was denied July 21, 1994.